### GEORGE C. MCFARLAND

*v.*

### ANNIE H. MCFARLAND *et al.*

*Opinion filed December 21, 1898.*

1. WILLS—*devise construed as passing a determinable fee.* A devise of the real estate and personal property, comprising a private hospital for the insane, to three named devisees, "to have and to hold the same so long as they shall carry on the business" of treating insane patients, but which provides that in case the devisees should find the business unprofitable or inexpedient, then, at the written request of at least two of them, the executor should sell the property and make distribution in a specified manner, passes a fee, determinable only by making the request in the manner set forth.

2. SAME—*court will not substitute one contingency for another particularly specified.* A fee which has vested in a devisee subject to being determined upon the happening of a specified contingency will not be divested by the court unless such contingency literally occurs.

3. Appeals and errors—*one cannot complain of errors affecting others alone.* One cannot complain, on appeal, of alleged errors which only affect others and which do not affect his interests.

4. Evidence—*the proper construction of a will is not the subject of evidence.* In a suit involving the construction of a will, witnesses can not be permitted to answer questions which indirectly call for their opinions as to the proper construction of particular provisions.

Writ of Error to the Circuit Court of Morgan county; the Hon. Cyrus Epler, Judge, presiding.

Andrew McFarland departed this life, testate, on the 22d day of November, 1891. His will is as follows:

"*First*—It is my will that all my just debts and funeral expenses be fully paid.

"*Second*—It is my will, and I order and direct, that the persons hereinafter named who are to have the control and management of the institution known as 'Oak Lawn Retreat,' viz., George C. McFarland, M. E. McFarland and Anna H. McFarland, shall, at the end of the first year of their management, pay to my daughter Mary E. Flack the sum of $500, and at the end of the second and third years of their management of the said institution a like sum of $500, and in no case is any payment to be made by said parties to my said daughter unless the said institution is under the exclusive control and management of the said parties.

"*Third*—To my son George C. McFarland I give my gold-headed cane.

"*Fourth*—To my son T. Fletcher McFarland I give my gold watch.

"*Fifth*—Subject to the payment of the debts, funeral expenses, contingent legacy and bequests above mentioned, and subject also to the charges and conditions hereinafter named, I give, devise and bequeath to my son George C. McFarland, my daughter-in-law, M. E. McFarland, and my granddaughter, Anna H. McFarland, all of my estate, both real and personal, wherever lo-

177—14

cated or situated, to have and to hold the same so long as they shall carry on and conduct the business for which the real estate above mentioned is peculiarly and particularly adapted, viz., the care and treatment of the insane. Included in the devise of real estate above mentioned is the property known as 'Oak Lawn Retreat,' which I have improved and arranged as a hospital for the care and treatment of the insane, and it is my wish and will that my said son George C. McFarland be the business manager of said institution, and that my daughter-in-law, M. E. McFarland, be the matron of said institution, and that my said granddaughter, Anna H. McFarland, (who, under my direction, has been specially educated in the medical profession with the view of having her assume the position of physician to said institution,) be the physician at said institution. I will and direct that so long as the said institution, viz., Oak Lawn Retreat, shall be operated or managed by the said parties above mentioned, viz., George C. McFarland, M. E. McFarland and Anna H. McFarland, they, the said last named parties, shall give to my son T. Fletcher and to my daughter Harriet N. McFarland each the same care, maintenance and support they now receive at said institution; and they, the said George C. McFarland, M. E. McFarland and Anna H. McFarland, shall also pay to T. Fletcher McFarland and Harriet N. McFarland each the sum of $100 per annum, payable in quarterly installments. The above named parties who are to control and manage said institution, viz., George C. McFarland, M. E. McFarland and Anna H. McFarland, shall share equally the profits in the business of conducting and managing the said institution.

"*Sixth*—If the said George C. McFarland, M. E. McFarland and Anna H. McFarland refuse to enter upon the management of said institution, or, having entered upon the management of the same, shall at any time deem it unprofitable or inexpedient to continue the management

of the same, then in that event, and on their written request, such request being signed by at least two of them, I will and direct my executors hereinafter named to sell all of my said real estate at public or private sale, as they, after consulting with my legal heirs, shall deem best; and I hereby empower my said executors to make and execute all deeds of conveyance necessary to carry out the provisions of this will. On such sale being made by my said executors, I will and direct that my said executors shall, out of the proceeds of such sale, pay all liens and charges on said real estate, including the costs and expenses of such sale, and make distribution of the remainder of the proceeds of such sale as follows, to-wit: First, divide such remainder into ten equal parts or shares; second, pay such shares or parts to the following named persons in the following proportions, to-wit: To George C. McFarland two shares; to Mrs. M. E. McFarland two shares; to Anna H. McFarland two shares; to T. Fletcher McFarland two shares; to Harriet N. McFarland two shares.

"*Seventh*—In the event that my son T. Fletcher McFarland, or my daughter Harriet N. McFarland, should choose to live or reside elsewhere than at said institution while the said institution is under the management and control of the said parties, viz., George C. McFarland, M. E. McFarland and Anna H. McFarland, then, if the place so chosen by them is within thirty miles of said institution, there shall be paid to each of them so residing away from said institution, in lieu of the care and maintenance mentioned above, an additional sum of $100 per annum, payable in quarterly installments.

"*Eighth*—I hereby nominate, constitute and appoint John A. Bellatti and Robert M. Hockinhull to be the executors of this my will."

The said Andrew McFarland died leaving him surviving the following as his only children and heirs-at-law: George C. McFarland and T. Fletcher McFarland, his

only sons, and Mary E. Flack and Harriet N. McFarland his only daughters. The persons mentioned in the second and other clauses of the will as those to be vested with the control and management of Oak Lawn Retreat are the plaintiff in error, George C. McFarland, a son of the testator, M. E. McFarland, (now deceased,) who was the wife of the said plaintiff in error, and Anna H. McFarland, daughter of said plaintiff in error. They accepted the provisions of the will and entered upon the management of the said institution. They paid to Mrs. Mary E. Flack the first and second of the three several sums of money directed to be paid her by the second clause of the will, and she accepted such payments from them. Only one of the persons (John A. Bellatti) nominated as executors of the will qualified, and he made due settlement of the estate in the county court of Morgan county and was discharged from further duties as executor.

On the 21st day of March, 1892, the plaintiff in error, by his deed of that date, conveyed and quit-claimed all his interest in the real estate described in the will to M. E. McFarland, his wife. On the 15th day of August, 1893, said M. E. McFarland died, leaving her husband, the plaintiff in error, and two daughters, said Anna H. McFarland and Marie B. Griffith, *nee* McFarland. The daughters, on the 9th day of September following the death of their mother, conveyed and quit-claimed to the plaintiff in error an undivided one-third part of the said real estate in the will mentioned. The management was then assumed by the plaintiff in error and his said daughters. On the 23d day of November, 1894, the payment last falling due to Mrs. M. E. Flack under the second clause of the will was made by the plaintiff in error and his said two daughters, Anna H. McFarland and Marie B. Griffith, and at the same time Mrs. Flack executed a quit-claim deed, conveying to the said parties so making said payment "all interest of the grantor in the real estate mentioned in the will."

In December, 1894, the plaintiff in error leased his interest in the "Retreat" to Frank Griffith, husband of his daughter Marie, until February 1, 1896. Said Frank Griffith and the defendant in error Anna McFarland on the same day entered into articles of co-partnership for the purpose of carrying on the business of treating the insane at Oak Lawn Retreat during the period of the running of the lease and until January 31, 1896, and the institution was operated by them under the said articles of co-partnership, Mrs. Griffith acting as matron. The plaintiff in error during this time was engaged in other affairs not connected with the "Retreat" and was not present at the institution. Shortly prior to the termination of the lease to Griffith and the articles of co-partnership, misunderstandings arose between the plaintiff in error and his daughters, Anna H. McFarland and Marie B. Griffith, by reason of which they realized they could not carry on the business of the institution together. At the expiration of the lease to Griffith the plaintiff in error returned to the institution and his daughters withdrew therefrom. He has since been in possession and control of the "Retreat."

On the 24th day of April, 1896, the said daughters of the plaintiff in error, Anna and Marie, filed this bill in chancery against the plaintiff in error, T. Fletcher and Harriet McFarland and the Security Savings, Building and Loan Association, the said association being made a party in order that a mortgage given by the testator, in his lifetime, on the real estate mentioned in the will, and which still remained, in the larger part, unsettled, might be adjusted. The allegations and theory of the bill are, that the plaintiff in error and the complainants therein are seized of the title in fee to the real estate in question, subject to charges created thereon by the will for the benefit of the said T. Fletcher and Harriet N. McFarland, and also subject to the indebtedness due to the loan association, and also to a mortgage lien claimed

to exist in favor of the complainant Anna H. McFarland, as administratix of the estate of M. E. McFarland, and another lien claimed in favor of the complainants in the bill. Answers were filed to the bill and replications to the answers. The plaintiff in error filed a cross-bill, in which he claimed to be the owner of the mortgage lien set out in the bill as existing in favor of the estate of M. E. McFarland, and represented that it was not for the best interest of the institution that the said mortgage should be foreclosed, but asking the court to decree that the complainant in the cross-bill was the equitable and true owner of said lien. Answers were filed to the cross-bill and replications to such answers, and the cause was submitted to the court.

The decree declares the plaintiff in error, and Anna H. Cromwell, *nee* McFarland, and Marie B. Griffith, *nee* McFarland, are the owners in fee of the premises described in the will as tenants in common, each owning an undivided interest, upon the theory that the plaintiff in error, his deceased wife and Anna H. were each seized, under the operation of the will, of an undivided one-third in the said land subject to the liens hereinbefore mentioned, and subject to equitable charges established by the decree in favor of T. Fletcher and Harriet N. McFarland to secure the provisions of the will in their behalf, respectively, and that the interest of the said M. E. McFarland descended, under the Statute of Descent, to her said daughters, Anna H. Cromwell and Marie B. Griffith, subject to the dower right of the plaintiff in error. The decree. adjusted the amount due on the mortgage to the building association and established it as a first lien against the property, and declared that the administratrix was the legal owner of the other mortgage lien and established the amount thereof as a second lien, and also declared a third lien in favor of Anna H. and Marie B., as claimed in the bill. The cross-bill was dismissed, and the premises in question and the personal property be-

longing to the institution declared not susceptible of partition and ordered to be sold by the master in chancery, and that the proceeds of such sale should be applied to the discharge of the liens, and the remainder distributed among the parties according to their rights as declared by the decree. The decree also provided that the property should be sold subject to the equitable charge established therein in favor of T. Fletcher and Harriet N. McFarland, respectively. This is a writ of error brought to reverse the decree.

J. O. PRIEST, for plaintiff in error.

JOHN A. BELLATTI, EDWARD P. KIRBY, and JULIAN P. LIPPINCOTT, for defendants in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The intention of the testator clearly appears. It was, the exclusive possession and control of and entire estate in the premises, and in the personal property used in connection therewith, which together constituted the "Oak Lawn Retreat," should vest in the plaintiff in error, his wife, M. E. McFarland, and his daughter, Anna H. McFarland, to be held and enjoyed by them indefinitely, unless they, or some two of them, should desire to relinquish and terminate their right and estate therein, and should signify such desire by a written instrument signed by at least two of them.

This devise was, we think, properly construed by the chancellor to pass an estate in fee, determinable only by the action of at least two of the devisees in the manner specified in the will. Words of limitation or inheritance are wanting, but our statute has made the addition of such words unnecessary "if an estate less than a fee" be not limited by express words, or does not appear to have been granted, conveyed or devised by construction or operation of law. (Rev. Stat. chap. 30, sec. 13.) The spirit of this statute and the policy of our law is to adopt

that construction of a devise which will facilitate the alienation of property, if such meaning may fairly be gathered from the instrument. (*Lister* v. *Sheppard*, 85 Ill. 242; *Giles* v. *Anslow*, 128 id. 187.) "If the terms of a devise clearly indicate an intention in the devisor to dispose of his entire estate in the property devised, it will be construed to convey a fee." (3 Washburn on Real Prop. —5th ed.—563.) In Schouler on Wills (p. 592) it is said: "Whenever, expressly or by implication, the will shows the purpose to give one's property in fee simple, that purpose shall prevail."

The payment of the total sum of $1500 to Mrs. Flack is made a personal charge upon the devisees in the event they accept the devise. At common law, though a devise contained no words of limitation or inheritance, it was implied to confer a fee if the payment of a debt or legacy was charged upon the devisee personally. *Funk* v. *Eggleston*, 92 Ill. 515; *McClelland* v. *Turner*, 15 Me. 436; *Varner* v. *Stevens*, 22 id. 331; *Harvey* v. *Olmstead*, 1 N. Y. 483; *Snyder* v. *Nesbeth*, 77 Md. 576.

It is undeniable the devisees, including the plaintiff in error, construed the devise to invest them with an estate in fee. The plaintiff in error conveyed all his right, title and interest to his wife, and after her death accepted from her heirs a conveyance purporting to convey him an equal undivided one-third interest in the premises. This is consistent with the construction we are disposed to give to the devise, and entirely inconsistent with the insistence in the briefs of counsel for the plaintiff in error that the fee simple title to the premises descended to all the heirs-at-law of the testator. It is clear the testator did not contemplate Oak Lawn Retreat should descend to his heirs-at-law in any contingency. He desired the plaintiff in error, his wife and their daughter should own and operate it as an asylum for insane persons, as he had done, and should pay Mrs. Flack, his daughter, the sums provided in the will, and should care for T. Fletcher and

Harriet N. McFarland while they should live, and should pay each of them $100 per annum. In case the plaintiff in error, his wife and daughter should decline to accept the devise, or, having accepted, should not desire to continue to operate the "Retreat" for the purpose he had prepared it, the testator intended the institution should be sold and the proceeds distributed equally among certain persons whom he designated in his will to receive the same. Two of such designated distributees were not heirs of the testator, and Mrs. Flack, who was his daughter and legal heir, was not included among them.

It is argued the theory of the decree is the "Retreat" is not being conducted as the testator designed, and that if such is the case it should be ordered sold, as contemplated by the will. The will, if we have correctly interpreted it, vested in the plaintiff in error, his wife, M. E. McFarland, and their daughter, Anna H. McFarland, (now Cromwell,) an estate in fee, determinable, without the aid of a conveyance, by said devisees, or any two of them, signing a written instrument requesting the estate be sold and the proceeds divided as the will, in such event, designated. One of the devisees is dead; the other two have not signed such a written instrument. The fact the surviving devisees have disagreed as to the management and control of the "Retreat" and are not conducting it as the testator desired, cannot be substituted for that which the testator required should be done in order to terminate the estate created by the will. In making disposition of this property the testator anticipated the devisees might desire to determine their estate in the "Retreat," and he provided a mode and manner in which they might accomplish such desire. When a devise is subject to be divested upon the happening of a certain specified contingency, courts will not accept another contingency as the equivalent of that named by the testator, but will only divest the estate when the contingency takes place literally. *Illinois Land and Loan Co.* v. *Bonner*, 75 Ill. 315.

It may be that the testator in the case at bar was not, when writing his will, mindful of the fact one or more of the devisees might die, and that had this occurred to him he would have provided that a disagreement between the two remaining devisees, and their failure to continue the management and control of the "Retreat," would determine their estate and authorize the sale of the property by the executors. Courts cannot, however, determine, by mere conjecture, that the testator omitted from his will provisions that he would have incorporated if he had not overlooked probable future occurrences, and undertake to rectify such omission, for to do so would be to incorporate, by construction, a new clause in the will. This would not only be contrary to the will as made, but would be making a new will. *Illinois Land and Loan Co.* v. *Bonner, supra.*

The provisions of the decree preserving a lien in favor of T. Fletcher and Harriet N. McFarland cannot be made the basis of well-grounded objection on the part of the plaintiff in error. As to him, the establishment of such a lien is eminently just and equitable. The effect is to postpone to these liens the liens in favor of the Security Savings, Building and Loan Association, the administratrix of the estate of M. E. McFarland, and of the defendants in error Anna H. Cromwell and Marie B. Griffith. But the parties whose liens are so postponed do not object, and the plaintiff in error cannot be allowed to object for them.

Counsel for plaintiff in error remarks, in his brief, that proper testimony tending to support the cross-bill was rejected by the court, but does not indicate to what particular testimony the remark applies. Nor does the abstract disclose that objections were made and exceptions saved to any ruling of the court as to the admissibility of testimony, save one. A witness in behalf of the plaintiff in error, as complainant in the cross-bill, was asked if the "Oak Lawn Retreat" was "being carried on

as provided by the will of Andrew McFarland," but the court ruled the question should not be answered. It was clearly improper. It called upon the witness to construe the will, and to give, as a conclusion, merely, whether the manner in which the institution was being conducted was that which the will required.

The cross-bill was not supported by the proofs as to the allegation the complainant therein was the owner of the lien decreed to his daughters, and the relief prayed by the cross-bill was upon the theory the title to the "Retreat" was in the heirs of the testator, which, as we have seen, is not the true view of the case. The cross-bill was properly dismissed.

The decree is affirmed.                    *Decree affirmed.*