FRANK W. MATTESON, Admr. *et al.* v. JOHN NICHOLAS BROWN, *et al.*

JUNE 20, 1911.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1) Wills. Trusts.*

Testator devised certain homestead and other real estate in trust, to permit his wife to have the use thereof, free of rent during her life, and by the 19th clause of his will, devised and bequeathed his residuary estate in trust, with provision that in the event there was no issue of testator living at his death, the trustees should (1) "forthwith transfer and convey" the stock of various companies to his brother, if living, and in the event of his death, to the issue of said brother; (2) to stand seizsd of testator's residuary real estate

to the use of testator's brother, if living, but in the event of his death, to the use of the children or more remote issue of said brother; (3) to stand seized of the remaining parts of the residuary personal estate to transfer one-quarter part to testator's mother for her absolute use; one-quarter part to his brother, if living, but in event of his death to the children or more remote issue of said brother; to hold one-quarter part to pay over the income to testator's wife until her death or marriage, and to hold the remaining one-quarter to pay over the income to his sister for life.

Testator deceased without issue. His brother deceased in the lifetime of testator leaving issue a son.

By the 20th clause of the will testator provided that the trustees "shall collect the income, dividends and profits from said residuary estate and said trust properties, estate and premises respectively, and the investments and reinvestments of the same, and shall pay therefrom all taxes, assessments, insurance premiums, repairs and all other expenses incurred in the care and management of said trust estate and also all upon or in respect of my homestead and other estate devised in trust for my wife; and including their own reasonable compensation."

*Held*, that it was the intention of testator clearly expressed that in the conditions existing at the time of his death, certain portions of the residuary estate should pass out from the trusts and that the trustees should not. collect the income from such portions, and it was only upon the income dividends and profits arising from "the residuary estate and said trust properties, estates and premises respectively and the investments and reinvestments of the same" that the taxes and expenses of the homestead estate were charged.

*Held*, further, that a specific direction to forthwith transfer and convey cannot be limited or controlled or the gift cut down by the language of a later general direction to trustees to collect the income from the residuary estate and trust properties.

*Held*, further, that while there was the clear intention that the widow should have the use of the homestead estate free from rent and that it should be exonerated from payment of taxes and other expenses, it was equally clear that it was his intention that the income of one-fourth part of his remaining residuary estate held in trust for her should in any event bear a portion of the burden of taxes and expenses, not only of the homestead estate, but also of the other trust properties and pay a portion of the compensation of the trustees, so that there was no general intention to be found in the will favoring the income of that portion, or preventing a construction which would increase the burden upon such portion.

*Held*, further, that with reference to the residuary real estate there being no charge thereon or upon its income rents and profits, either by express provision or by necessary inference, the trust was executed by the statute of uses and the legal title vested at once.

*Held*, further, that it was the intention of testator that the homestead expenses. be paid from the residuary trust estate, and in the circumstances which arose, certain portions passing out of the trust, such expenses were properly payable from the income of so much of the residuary personal estate only as was transferred to and came under the control of the trustees.

*(2)   Wills.   Expressed Intention.*

An expressed intention in a will must control unless such intention is clearly
    modified or annulled by some other provision, or unless upon examination
    of the whole will there appears an implication to the contrary so plain as
    necessarily to require this apparent intention to be disregarded.

*(3)   Wills.   Construction.   Omissions.*

Courts cannot determine by mere conjecture that testator omitted from his
    will provisions that he would have incorporated, if he had not overlooked
    probable future occurrences and undertake to rectify such omission, for to
    do so would be to incorporate by construction a new clause in the will.
    This would not only be contrary to the will as made, but would be making a
    new will.

*(4)   Wills.   Intention.*

In seeking the intention of a testator the court must consider what he has
    written in the will and nothing is to be inferred save what is a necessary
    implication, and this means not natural necessity, but so strong a probability
    of intention, that an intention contrary to that which is imputed cannot be
    supposed.

*(5)*   While the court, after it has found that there has been an " omission"
    in a will, and that such omission was inadvertent, may modify the will
    to supply such omission, this power will be exercised only in extraordinary
    cases, and then with the greatest caution, when the necessity is clearly
    presented.

BILL IN EQUITY for construction of will.

SWEETLAND, J.   This is a bill in equity brought by the
trustees under the will of Harold Brown, the executor of
the will of Sophia Augusta Brown, and the administrator *de
bonis non* with the will of said Harold Brown annexed, for in-
struction, which prayer involves the construction of certain
clauses of said will of Harold Brown.

Said will was executed October 16th, 1899.   The testator
died on May 10th, 1900; and said will was finally proved
before the Probate Court of Newport on June 18th, 1900.

By the second clause of said will the testator bequeathed
to his wife, Georgette Brown, for her absolute use, three
hundred and fifty thousand dollars, and, with some slight
reservations, all works of art, household furniture, horses,
carriages and like effects by him possessed, together with
certain other pieces of personal property.

By the third clause of said will the testator devised and bequeathed his Mansion House Estate in Newport, his undivided one-half of land situated in Newport called the Stable Estate, another tract of land situated in Newport, his four shares of the stock of the Spouting Rock Beach Association in Newport and his bath-houses on said beach, to certain trustees in trust, among other matters, to permit the testator's wife, the defendant Georgette Brown, to have the use and occupation of the same, free of rent therefor, during her life, and, in case of lease or sale of the same, or of any part thereof, to pay over, in case of lease, the entire rents, and in case of sale, the entire income arising from the proceeds of sale, to her, for her absolute use.

The testator further bequeathed a number of pecuniary and specific legacies; and by the nineteenth clause of said will devised and bequeathed his residuary estate, real and personal, to certain trustees in trust, the provisions of which trust materially vary in dependence upon the circumstances of there being or not being a child, children or more remote issue of the testator living at his death.

In the event that there should be issue of the testator living at the time of his death, it is provided, *first*, that the trustees shall set apart from the rest of what the testator terms his residuary personal estate, the shares of stock owned by him, at the time of his death, in the capital stock of the Lonsdale, the Hope, the Blackstone Manufacturing and the Berkeley Companies; *Second*, that the said trustees shall hold one-fourth part of the remaining portion of his residuary personal estate in trust to pay over the net income therefrom to the testator's wife until her death or marriage; and *third*, that, after the death or marriage of said wife as to this one-fourth part of his remaining residuary personal estate, and, after the testator's death, as to all the remaining residuary estate, real and personal, including shares of stock in the four manufacturing companies aforesaid, the said trustees shall stand seized and possessed of the same to the use of the testator's issue, who shall in the testator's life-

time or after attain the age of twenty-one years or marry under that age.

In the event that there be no issue of the testator living at the time of his death, the provisions of the trust, among other things, are: *first*, that the trustees shall "forthwith transfer and convey" the shares of stock in the four manufacturing companies aforesaid to the testator's brother, John Nicholas Brown, if then living, for his own use forever. If the said John Nicholas Brown should not be living at the time of the testator's death then the trustees shall "forthwith transfer and convey" said shares of stock to the issue of the said John Nicholas Brown; *second*, that the trustees shall stand seized of the testator's residuary real estate to the use of the testator's brother, John Nicholas Brown, if he be living at the time of the death of the testator and to the use of his heirs forever. If the said John Nicholas Brown should not be living at the time of the testator's death, then said trustees to stand seized of said residuary real estate to the use of the child, children or more remote issue of the said John Nicholas Brown; *third*, the trustees shall stand seized of the remaining parts of the testator's residuary personal estate in trust to assign, transfer and pay over, one-quarter part to the testator's mother, Sophia Augusta Brown, for her own absolute use forever; *fourth*, to assign, transfer and pay over, one other quarter part to his brother, John Nicholas Brown, if he be living at the time of the testator's death, to his own absolute use forever; if the said John Nicholas Brown, should not be living at the time of the testator's death, then the said trustees to assign, transfer and pay over said one quarter part to the child, children or more remote issue of the said John Nicholas Brown; *fifth*, to hold one other quarter part in trust to pay over the net income arising therefrom to the testator's wife until her death or marriage, in the same manner as was provided in the event of the testator leaving issue at the time of his death; *sixth*, to hold the remaining one-quarter part in trust to pay over the net income arising therefrom to the testator's sister, Sophia Augusta Sherman, for and during her

natural life, and upon her death the trustees to stand seized and possessed of said one-quarter part for the use of the issue of said Sophia Augusta Sherman.

The testator died a young man, within a few months after the execution of this will, without ever having had issue. The testator's brother, John Nicholas Brown, deceased in the testator's lifetime, leaving John Nicholas Brown, Jr., a minor, his only child and issue him surviving.

By the twentieth clause of his will, the testator, among other things, provided as follows: "  . . .  And my said Trustees shall collect the income, dividends and profits accruing and arising from the said residuary estate, and said trust properties, estate and premises respectively, and the investments and reinvestments of the same, and shall pay therefrom all taxes, assessments, insurance premiums, repairs and all other expenses incurred in the care and management of said trust estate, and also all upon or in respect of my homestead and other estate hereinbefore by the third clause of this will devised in trust for my wife, and including their own reasonable compensation for services under the several trusts aforesaid."

After the probate of said will the executors following what they considered to be the direction to them contained in the will, transferred the shares of stock in the four manufacturing companies aforesaid to said John Nicholas Brown, Jr., and paid over and transferred to him and to Sophia Augusta Brown, the mother of the testator, to each respectively, one-fourth of the testator's residuary personal estate remaining in the hands of the executors after transferring the said shares of stock to John Nicholas Brown, Jr., as aforesaid, and transferred one other one-fourth part of the said remaining residuary personal estate to the trustees under said will in trust for the widow of Harold Brown, for her life with remainder as in said will declared, and transferred the remaining fourth part of said remaining residuary personal estate to the trustees under said will in trust for the said Sophia Augusta Sherman, the sister of the testator,

with remainder as in said will declared; and further, believing that the legal title of the testator's residuary real estate vested at once in said John Nicholas Brown, Jr., by the statute of uses, the said trustees have never collected any of the rents or income from or otherwise exercised any control over the said residuary real estate of said Harold Brown, but said trustees have permitted the rents and income of said real estate to be collected by the guardian of the estate of said John Nicholas Brown, Jr. The said trustees, under the will of Harold Brown, have, therefore, in their hands and under their control only the said two-fourth parts of the testator's residuary personal estate remaining after transferring said shares of stock to John Nicholas Brown, Jr., as aforesaid, and, in accordance with what they understand to be the direction of the twentieth clause of said will, they have paid from the income of these two-fourth parts of the testator's remaining residuary personal estate in their hands all the taxes, assessments, insurance premiums, repairs and all other expenses incurred in the care and management of and upon or in respect of the homestead and other estates given by the third clause of said will in trust for the benefit of the testator's wife.

It is contended by the respondents Sophia Augusta Sherman and Georgette Brown that the said executors should not have transferred the said shares of stock in the four manufacturing companies to the said John Nicholas Brown, Jr., and should not have conveyed the said two-fourth parts of the testator's remaining residuary personal estate to said Sophia Augusta Brown and the said John Nicholas Brown, Jr., without having first provided that said residuary estate so transferred and conveyed to said Sophia Augusta Brown and John Nicholas Brown, Jr., should contribute its *pro rata* share of the taxes and other expenditures for the benefit of said homestead estate, so that the said taxes and expenditures should be a charge upon the income of the entire residuary estate of the testator and the entire burden of said taxes and expenditures should not be thrown upon

the income from the two-fourths parts of said remaining residuary personal estate of the testator now in the hands of said trustees; and that the said trustees should not have permitted and should not now continue to permit the said John Nicholas Brown, Jr., to receive the income of the testator's residuary real estate without contributing to the taxes and expenditures for the maintenance of said homestead estates. It is in regard to the questions raised by these claims of the said respondents, Sophia Augusta Sherman and Georgette Brown, that the complainants ask for a construction of the nineteenth and twentieth clauses of said will, so far as relates to said questions, and for instruction as to their duty in the premises.

In the circumstances surrounding this estate, as they existed at the time of the testator's death, to support the claim that it was the testator's intention, as shown by the will, to charge the income of the entire residuary estate with the payment of the taxes and expenses of the homestead estate, such intention must be found clearly expressed in the will or such intention must appear by necessary implication from an examination of the will as a whole. The respondents contend that the twentieth clause provides in express terms for the payment of said taxes and expenses from the income of the entire residuary estate; and find such express provision in the following language of said twentieth clause: "And my said trustees shall collect the income, dividends and profits accruing and arising from the said residuary estate, and said trust properties, estates and premises respectively, and the investments and reinvestments of the same, and shall pay therefrom all taxes, assessments, insurance premiums, repairs and all other expenses incurred in the care and management of said trust estate, and also all upon or in respect of my homestead and other estates hereinbefore by the third clause of this will devised in trust for my wife, and including their own reasonable compensation for services under the several trusts aforesaid." This language is not free from doubt and considered without reference to

the other provisions of the will furnishes some support for the respondents' contention. The respondents argue that the words "and trust properties, estates and premises respectively" are added simply to amplify the expression "residuary estate" in order to show what the testator means to include in his residuary estate, the income from which is to be collected by the trustees. It can pertinently be replied to this argument that by the nineteenth clause the testator has very clearly defined his residuary estate; and these added words do not tend to make clearer what the testator meant by his residuary estate, or to express more clearly the intention, if such he had, that the trustees should collect the income of the entire residuary estate in all circumstances; but rather tend to raise a doubt as to what was the testator's intention in that regard; and in themselves give some basis for the conclusion that the testator contemplated two possibilities, one in which the income of the whole residuary estate and another in which the income of only some portion thereof, retained by the trustees, should "respectively" bear the burden of this charge. But it is not from a consideration of this language alone, but by an examination of the provisions of the whole will that the intention of the testator is to be found.

(1)　The provisions of the will which became operative by reason of the circumstances existing at the time of the testator's death, are inconsistent with a construction of the twentieth clause which would empower and direct the trustees to control, invest and reinvest the entire residuary estate and to collect the income, dividends and profits accruing and arising therefrom; and it is only upon the income, dividends and profits accruing and arising from "the said residuary estate, and said trust properties, estates and premises respectively and the investments and reinvestments of the same" and not upon the estates or trust properties themselves, that said taxes and expenses of the homestead estate are charged. It was the intention of the testator, clearly expressed by the positive language of the will,

(2) that, in the conditions existing at the time of his death, certain portions of the residuary estate should pass out from the trusts, and that the trustees should not collect the income derived from such portions. This expressed intention must control the action of the trustees unless such intention is clearly modified or annulled by some other provision of the will, or unless upon an examination of the whole will there appears an implication to the contrary so plain as necessarily to require this apparent intention to be disregarded. The will provides: "in the event of the failure of the limitations of the preceding trust, that is to say, in case no child or more remote issue of mine shall be living at my death . . . then my said trustees shall stand seized of all and singular the said residuary estate, real and personal given, bequeathed and devised to them . . . as aforesaid and all investments and reinvestments . . . thereof, to and for the following uses and purposes, that is to say;" and the testator then proceeds to divide up the residuary estate and to provide for an immediate distribution of certain portions of it. The trustees are directed among other things "to forthwith transfer and convey" the said stock in the four manufacturing companies aforesaid to the testator's brother, John Nicholas Brown, for his own use forever, if living and if not to his child or children or more remote issue. This positive and explicit direction is not consistent with the continuance of a control of said shares of stock by said trustees, or with a power in them to sell the same or to invest or reinvest the proceeds of such sale or to collect the dividends or income accruing upon said stock. We find no express provision of the will which in any manner modifies this explicit direction to forthwith transfer and convey said shares of stock to John Nicholas Brown for his own use forever, unless it be the provision in the nineteenth clause of the will, the exact meaning of which is not altogether clear, directing the trustee to collect the income from the residuary estate and trust properties, respectively. We know of no rule of construc-

tion by which the specific direction to forthwith transfer and convey said shares of stock would be limited or controlled or the gift cut down by the language of the later general direction to the trustees, to collect the income from the residuary estate and trust properties.

The respondents claim that it is a necessary implication from the will as a whole that the testator did not intend the expenses of the homestead estate to be paid solely from the income of the two-fourth parts of the remaining residuary personal estate now held by the trustees.

The testator contemplated the possibility of just the circumstances which developed, namely, that he should die without issue surviving him; and that the direction to forthwith transfer and convey the said shares of stock would become operative at once. If the testator had wished that the said shares of stock or the income thereof should be charged with the payment of a portion of the homestead expenses he could easily have so provided in express terms; and if such was his intention it is unlikely that he would by inadvertence have omitted a provision so obviously important.

We have already determined, in this opinion, that there is no express provision of the will which makes a charge upon the income or dividend accruing from said shares of stock. Is there a necessary implication to be drawn from the will that the testator intended to make such a charge; or do the circumstances as they developed upon the testator's death require the court of necessity to find that there was an omission by inadvertence which the court must supply, in order that the evident intention of the testator may not be frustrated? It may be urged as quite likely, if the testator had carefully considered the matter, that he would have desired that the income of said shares of stock should bear a part of the expenses of the homestead estate and to that extent relieve the income of the portion of the residuary estate held in trust for his wife; but this consideration is based entirely upon conjecture. "Courts

(3) cannot . . . determine by mere conjecture, that the testator omitted from his will provisions that he would have incorporated if he had not overlooked probable future occurrences, and undertake to rectify such omission, for to do so would be to incorporate, by construction, a new clause in the will. This would not only be contrary to the will as made, but would be making a new will,"—*McFarland v. McFarland*, 177 Ill. 208. This estate was very large. The taxes and expenses upon the homestead estates are small as compared with the income of the portions of the residuary estate still in the hands of the trustees. It is not inherently improbable that the testator desired to give said shares of stock to his brother without a charge upon them although, by so doing, he increased to some extent the burden upon other portions of the residuary estate, including those portions held in trust for his wife and his sister. It was clearly the intention of the testator that his widow should have the use and occupation of the homestead estates free from rent and that these estates should be exonerated from the payment of taxes and other expenses; but it is equally clear that it was the intention of the testator that the income of one-fourth part of the remaining residuary estate held in trust for the wife should in any event bear a portion of the burden of the taxes and other expenses not only of the homestead estates, but also of the other trust properties and should also pay a portion of the compensation of the trustees. Thus it cannot fairly be urged that there is any general intention to be found in the will favoring the income of that portion of the residuary estate held in trust for the testator's wife; or that a construction which would relieve the income from said shares of stock and thus increase the burden upon the portion held in trust for the wife violates any general intention of the testator expressed in his will.

(4) In seeking the intention of the testator the court must consider what he has written in his will; and nothing is to be inferred save what is a necessary implication. Lord Eldon,

in *Wilkinson* v. *Adam*, 1 Ves. & B., 422, at page 465, says: "and my opinion is, that such intention must appear by necessary implication upon the will itself. With regard to that expression 'necessary implication,' I will repeat what I have before stated from a note of Lord Hardwicke's judgment in *Coriton* v. *Helier;* that in construing a will conjecture must not be taken for implication; but necessary implication means, not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator, cannot be supposed." In *Bishop* v. *McClelland*, 44 N. J. Eq. 450, the court says (p. 452): "A bequest may undoubtedly arise from implication, but to warrant the court in so declaring, there must be something more than conjecture to support its declaration. The implication must be a necessary one. The probability of an intention to make the gift implied must appear to be so strong, that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind. A construction in favor of a gift by implication should never be adopted, except in cases where, after a careful and full consideration of the whole will, the mind of the judge is convinced that the testator intended to make the gift." In *Nash* v. *Smith*, 17 Ves. Jr. 28, 32, the Master of the Rolls,. Sir William Grant, says: "I may perhaps conjecture, that the intention of this testator is very insufficiently expressed: but I do not know, that I am at liberty to fill up the blank, which he has left." What has been said concerning the claim that there was a charge upon the income of the said shares of stock to contribute towards the expenses of the homestead estate applies to the like claim as to the income from the two-fourth parts of the testator's remaining residuary personal estate paid over to Sophia Augusta Brown and to John Nicholas Brown, Jr. The direction of the will, that these portions of the residuary estate shall be distributed, is equally explicit and said two-fourth parts are respectively to be assigned, transferred and paid over to said Sophia Augusta Brown and to John Nicholas

Brown, if living, and if not to his child, children or remote issue to their own absolute use forever. With reference to the testator's residuary real estate, the will provides that in the event of the failure of issue of the testator the trustees should stand seized of said real estate to the use of John Nicholas Brown, if living, and if not to the use of his child, children or more remote issue. There is no charge upon this real estate or upon its income, rents, and profits contained in the will either by express provision or by necessary inference. In such circumstance the rule is that the trust is executed by the statute of uses and that the legal title to the real estate vested at once in John Nicholas Brown, Jr.,— *Nightingale* v. *Hidden,* 7 R. I. 115; *Luther* v. *Haile,* 10 R. I. 291; *Fish* v. *Prior,* 16 R. I. 566; *Sullivan* v. *Chambers,* 18 R. I. 799.

The respondents consider the authority of *Fisher, Petitioner,* 19 R. I. 53, and *Barstow* v. *Thomas,* 20 R. I. 561, as most important to their case and argue that the doctrine there involved is clearly applicable to the facts of the suit at bar. In *Fisher, Petitioner,* 19 R. I. 53, a testator devised to his widow a lot of land with the buildings thereon "for and during her natural life, and the expenses of keeping the same in repairs, together with taxes, shall be paid out of my estate by my executors hereinafter named." He further devised and bequeathed to his wife "the income arising from one undivided quarter part of all my estate . . . until my youngest son then living shall have attained the age of forty years." He then provided that "at the expiration of said time" the property be divided into four equal parts and distributed to his wife and three sons. He made no provision for the continued payment by his executors of the homestead expenses after the distribution. This court, in holding the provision for payment of expenses a charge upon the whole of the estate in the hands of the executors, says that it is a reasonable presumption that "the omission to except from the division of his property so much as should be necessary to provide for

repairs and taxes on the Lockwood street estate was inadvertent," and that therefore the fourth clause requiring distribution "should be modified to this extent, and that so much of the personal estate as shall be required to enable the administrator to pay the expenses for keeping the Lockwood street estate in repair and the taxes assessed against the same, as provided in the second clause, shall remain undivided in the hands of the administrator, to be held by him for such payment."

In *Barstow* v. *Thomas*, 20 R. I. 561, there was a devise to the testator's wife of the use, occupation, rents, profits and income of his homestead estate "free from all taxes, assessments and any and all expenses for repairs, insurance and otherwise." The testator also bequeathed to his wife an annuity. "By the residuary clause he gives, bequeaths, and devises all the rest, residue, and remainder of his estate in trust, and directs the trustees to take possession of and to stand possessed thereof during the continuance of the trusts, and to pay therefrom the annuity to his widow and all taxes, assessments, and expenses for repairs and insurance on the homestead estate, and provides that when the period of three years next after his decease has expired, that the trusts as to the residue and remainder of the estate shall cease, and the trustees or trustee for the time being shall stand seized and possessed of all said trust estate, 'in trust, to pay over, transfer and convey the same, subject to the payment of the annuity aforesaid given to my said wife, as follows, *viz.*: One-sixth part to each of my children, namely, . . . . for the sole use of them respectively and their respective heirs, executors, administrators and assigns.'" The court held that the intent of the testator, that his widow should occupy the homestead estate without being required to pay taxes, assessments and expenses, is controlling; and that so much of the residuary trust estate as was necessary to pay such taxes, assessments and expenses during the lifetime of the widow should be retained by the trustees in trust for such payments and distributed

on the death of the widow.   In each of these cases the general intention of the testator was clear that the taxes and expenses upon the homestead estate, devised for life to the testator's widow, should be paid from the residuary trust estate; that such payments were to continue during the lifetime of the widow; and this intent of the testator was plainly controlling.   In each case, however, the testator had provided for a distribution of his entire residuary trust estate at a time which might be, and which in each case actually was, during the lifetime of his widow, but he had entirely failed to make proper reservations or provisions for carrying out his controlling intention in the event of such distribution.   The court in those cases was obliged, of necessity, to provide a fund for the payment of the homestead expenses in order that the purpose of the testator, clearly manifest, should not be defeated.   If the circumstances had so developed in the case at bar that the entire residuary estate had passed out of the trust, the court would be confronted with a like necessity and the cases of *Fisher, Petitioner*, and *Barstow* v. *Thomas*, would become pertinent authority for the consideration of the court.   The court in the two cases referred to was obliged to find that there had been an "omission" in each of the wills under consideration; that these omissions were inadvertent and then the court assumed to modify certain clauses of each will in order to supply these omissions. Such power undoubtedly exists in the court, but it will exercise that power only in extraordinary cases, and then with the greatest caution, when the necessity is clearly presented to the court.   The case at bar in the state of facts which actually existed at the testator's death does not present circumstances of such necessity.   It was the testator's intention that the homestead expenses should be paid from the residuary trust estate, and that is all that we can say with certainty as to the source from which he intended such payments to be made.   In the circumstances which developed upon the testator's death certain portions of the residuary estate passed out from the trust, but there still

remained in the trust estate a very large amount, the income from which is many times sufficient to pay the expenses of the homestead estate.   To pay these expenses from such income conforms to the expressed intention of the testator, that said expenses should be paid from the income of the residuary trust estate; although it is possible to conjecture that he may not have desired the whole of said expense to be paid from the income of those portions only, which now are in the hands of the trustees.   However, to apply the doctrine of *Fisher, Petitioner,* and *Barstow* v. *Thomas,* to this case and to modify the clauses of the will providing for the transfer of the stock and other portions of the residuary personal estate to John Nicholas Brown, Jr., and to Sophia Augusta Brown, and providing for the immediate vesting of the title of the residuary real estate in John Nicholas Brown, Jr., by operation of law, would be, "to carry the doctrine of implication, which is always resorted to with caution and even fastidiousness to an unreasonable length," as was said in *Ferson* v. *Dodge,* 23 Pick, 287.   Lord Mansfield is reported to have said in *Chapman* ex d. *Oliver* v. *Brown,* 3 Burr. at 1634, "A court of Justice may construe a will; and, from what is expressed, necessarily imply an intent not particularly specified in words, but we cannot, from arbitrary conjecture, though founded upon the highest degree of probability, add to a will, or supply the omissions."

We are of the opinion that the transfer of the stock in the four manufacturing companies aforesaid to John Nicholas Brown, Jr., and the transfer of the two-fourths part of the remaining residuary personal estate to Sophia Augusta Brown and to John Nicholas Brown, Jr., was in accordance with the direction of the will; that the action of the trustees in permitting the guardian of the estate of John Nicholas Brown, Jr., to collect the rents and income of the residuary real estate was proper; and that the taxes and expenditures upon or in respect of the testator's homestead and other estates by the third clause of his will devised in trust for his wife are properly payable from the income of so much of

the residuary personal estate only as was transferred to and came under the control of the trustees of said will.

A decree may be presented to this court in accordance with the above opinion.

*James Tillinghast, Tillinghast & Collins,* for complainants.
*Sheffield, Levy & Harvey,* for John Nicholas Brown.
*Edwards & Angell,* for Sophia Augusta Sherman and Georgette Brown.
*Eugene A. Kingman, Robert B. Dresser, Eliot G. Parkhurst,* of counsel.