WILLIAM STAACK et al., Appellants, v. MARY DETTERDING et al., Appellees.

WILLS: Construction—Estate Conveyed—Life Estate (?) or Determinable Fee (?). A will devising to the wife of testator all his real estate *"in fee simple, so long as she will be my widow and not marie again,"* conveys a defeasible fee—a fee subject to being divested only by the marriage of the wife.

*Appeal from Bremer District Court.*—M. F. EDWARDS, Judge.

JANUARY 20, 1917.

REHEARING DENIED JANUARY 15, 1918.

ACTION in equity by plaintiffs to quiet title. The action involves the construction of a will. The plaintiffs appeal from so much of the ruling of the trial court as sustained the first and third grounds of defendants' demurrer to the petition, and defendants appeal from so much of the ruling of the district court as overruled the second ground of the demurrer. Plaintiffs first perfected their appeal, and are the appellants. A statement of the facts appears in the opinion.—*Affirmed on both appeals.*

*E. R. O'Brien,* for appellants.

*Sager & Sweet,* for appellees.

PRESTON, C. J.—The will, so far as it is material in this case, provides:

"Second: I give and bequeath unto my beloved wife, Anna Staack, nee Kroeger, all my Real Estate of whatsoever name or nature, in fee simple, so long as she will be my widow and not marie again."

It is thought by some of the parties that another provision of the will has some bearing. It is as follows:

"Third: I give and bequeath unto my beloved wife

aforenamed all of my personal property, moneys and credits, for her to own and enjoy forever."

Another word in the will is misspelled. It is written "namend" for named. And in describing the township in which he lived, it is spelled "Townsh."

No question is made but that testator, by the use of the word "marie," meant "marry." The widow is still living, and has not remarried. The will, according to the abstract, was admitted to probate in September, 1899. The year 1889 was probably intended. In 1891, the widow conveyed part of the land owned by the testator, 160 acres, for the consideration of $1,500, to appellant William Staack, and in July, 1907, the heirs other than defendants quitclaimed to said William their interest in the tract so conveyed. In 1907, the widow and the heirs other than defendants conveyed to appellant John Staack another part of the land owned by testator, to wit, 100 acres, for the consideration of $5,000; and in 1892, the widow conveyed to another son, Gottlieb, all the rest of the land which stood in the name of the testator at the time of his death. The heirs other than defendants also quitclaimed in 1907. Plaintiffs are sons of deceased and his widow, and defendants Mary and Anna are daughters. The other defendants are their husbands. Plaintiffs prayed that the title to the respective tracts be quieted in the grantees, as against the two daughters and their husbands.

The demurrer was upon the following grounds: (1) That the facts stated in the petition do not entitle plaintiffs to the relief demanded. (2) It appears from the face of said petition that defendants Mary Detterding and Anna Suhr are the owners in fee simple of an undivided one-ninth interest in and to the premises described therein. (3) It appears from the petition that Anna Staack, widow of testator, is still living, and under no construction of the will has the said widow acquired the absolute title to the lands

owned by testator, nor any such interest as would enable her to convey title to the plaintiffs herein, as against the defendants.

Plaintiffs contend that, under the will, the widow took a fee simple title, and that the conveyances by her to them are valid. Defendants contend that the widow took but a life estate. The trial court held, and we think correctly, that the estate devised to the widow was a defeasible fee. Neither plaintiffs nor defendants are satisfied with the ruling. Plaintiffs argue, and cite authorities to sustain their contention, and defendants to sustain theirs; but neither has argued or cited any authority on the question as to whether it is or is not a defeasible fee. Both parties concede that no case can be found where the language of the will is precisely like that in the instant case. But, as we have said before, decisions construing other wills are not always helpful, because the language used is not the same.

Plaintiffs' contention is that, by the use of the words "fee simple," the will gave an absolute title, and that the subsequent provision is repugnant. Appellees say that the use of the words "fee simple" was ill advised, but contend that this cannot have the effect of extending the term providing for a life estate. Cases are cited by the parties as to general rules of construction, about which there seems to be no dispute. Cases are cited to the effect that, if there is irreconcilable repugnancy between two clauses, the last expression controls, and that mere ambiguity will not convert into a fee simple estate what would otherwise be plainly a life estate; also that the fact that the widow may never marry will not enlarge the estate to a fee; and it is conceded by both that the intent, of the testator controls, and that all parts of the will must be given force, if possible.

1. Referring first to plaintiffs' contention: They say that the words following the words "fee simple," in Paragraph 2, are merely precatory, and an expression of desire

on the part of the testator; that he does not desire his wife's remarriage; and that said last clause is repugnant. They cite, to sustain their contention, among other cases, *In re Burbank's Will*, 69 Iowa 378, 381; *Rona v. Meier*, 47 Iowa 607, 609; *Alden v. Johnson*, 63 Iowa 125; *Killmer v. Wuchner*, 74 Iowa 359; *Pellizzarro v. Reppert*, 83 Iowa 498; *Halliday v. Stickler*, 78 Iowa 388; *Law v. Douglass*, 107 Iowa 606, 608; *In re Barrett's Will*, 111 Iowa 570; *Williams v. Allison*, 33 Iowa 278; *Podaril v. Clark*, 118 Iowa 264; *Channell v. Aldinger*, 121 Iowa 297; *Meyer v. Weiler*, 121 Iowa 51; *Reichauer v. Born*, 151 Iowa 456. They also refer to *Simpkins v. Bales*, 123 Iowa 62, and say of it that there, by the express terms of the will, the widow took a life estate in the property of her deceased husband, with power of disposal during her life or widowhood, and that, having conveyed by deed within that period, title passed to the grantee named in the deed. Appellants say that that case differs from the one now before us in this respect: That Simpkins provided in his will that the remainder of his property left at the time of his wife's death, or the termination of her widowhood, should descend to his children and heirs at law, which is not true in the instant case. This may have some bearing; but we think it is not controlling, for the reason that, in the instant case, if the widow takes but a life estate, the heirs would take the remainder, upon her death or remarriage.

We shall not attempt to again review the cases cited and relied upon by appellants. They are cases where there was an absolute grant, and an attempt thereafter to place limitations thereon which were repugnant thereto, or where there was power of disposition, and the like.

2. For appellees, it is said that it has been held in another jurisdiction that a devise to one "while she remains the widow of said John McGuire, deceased, in fee simple * * *" gave only a life estate, citing *Appeal of*

*McGuire,* (Pa.) 11 Atl. 72. An examination of that case shows that it was an action to compel specific performance of a contract to convey certain land in fee simple, and the purchaser refused to take the deed, contending that plaintiff was not the owner in fee. The trial court held that the widow took but a life estate, and the Supreme Court of Pennsylvania said that it was inclined to think that, under the will, she took but a life estate. But the court said further that her estate was no more than a conditional fee; hence liable to expire on breach of the condition; and that such was not the kind of a fee that was contracted for; and that the court rightly refused to compel the payment of the purchase money. Appellees cite, also, *Price v. Ewell,* 169 Iowa 206, and *Smith v. Runnels,* 97 Iowa 55, and say of them that the language used in the wills there construed was as comprehensive as the term "fee simple;" and the court held the devise to be only a life estate. But we think the language of the wills in the cases cited is not as broad as in the instant case. In the *Smith* case, the will gave plaintiff all the estate of the testator for her sole use and benefit "during her natural life," afterwards to be divided. In the *Price* case, the will provided, substantially, that the wife of testator was to have and to hold in her exclusive right so long as she remained unmarried; and in case of her marriage, she was to have one third, and the remainder to be divided equally among his children; and on his death before a division, the estate should be divided equally among the children. It was held that this gave the wife a life estate only. But we think the language there used was not so broad as in the instant case. That case reviews many of the cases relied upon by appellees, which will be referred to in a moment.

It is quite generally held that a devise to the widow so long as she remains the widow devises but a life estate. Appellees cite, to sustain this proposition, *Brunk v. Brunk,*

157 Iowa 51; *Archer v. Barnes,* 149 Iowa 658; *Mohn v. Mohn,* 148 Iowa 288; *Koonz v. Hempy,* 142 Iowa 337; *Shaw v. Shaw,* 115 Iowa 193. But in none of these cases was the language as broad as in the instant case. Doubtless the last clause, standing alone, would give a life estate only; but it must be construed in connection with the words preceding "fee simple." Of course, if the last clause gives a life estate only, and the preceding words a fee simple, that would devise a fee-simple life estate, which is impossible.

3. Under the will being now reviewed, giving effect to all the language used, we think it is not subject to serious doubt that testator wished his wife to remain unmarried, and that he gave her a fee title if she did not remarry, and that the devise was subject to be defeated in case she did.

Definitions for a qualified or defeasible fee are found at 16 Cyc. 602, and notes. It is there said, in substance, that it is a fee which has a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end. The estate is a fee, because, by a possibility, it may endure forever in a man and his heirs; yet, as that duration depends upon the concurrence of collateral circumstances, which qualify and debase the purity of the donation, it is, therefore, a qualified or base fee. During its continuance, such a fee has all the incidents of a fee simple. The owner of such a fee cannot alone convey a perfect title to the property, and if he conveys in fee, the determinable quality of the estate follows the transfer.

It was said in *Hall v. Turner,* 110 N. C. 292, that the terms "determinable fee," "base fee," and "qualified fee," are now used indiscriminately, although some authorities have made distinctions in their application.

4. Appellant cites *Busby v. Busby,* 137 Iowa 57, in addition to the cases before referred to. We refer to this case at this point because it may be thought to be, in some

respects, similar to the case being now reviewed; and it was there held that the widow took a fee title. In the first paragraph of the Busby will, the homestead is devised by the testator to his wife, and in that paragraph, there are no words of limitation. The determination of that case was not placed upon the ground, as we understand it, that the first paragraph devised an absolute fee, and that subsequent provisions of the will were repugnant, and for that reason inoperative. There were numerous other provisions of the will, and, taking it all together, for the reasons given in the opinion and referred to again in the case of *Price v. Elwell,* supra, the widow took a fee title. But the question as to whether she took an absolute or fee-simple title, or a qualified title, was not discussed or determined. It is said by Mr. Justice Bishop, who wrote the opinion, at page 61:

"Now, it is well settled in the authorities that a devise by a testator to his widow, conditioned only against remarriage, carries title,—in fee if real estate, and absolute if personal property,—which is descendible to her heirs on her death, the condition having been faithfully observed."

It may be thought that this statement is not strictly accurate, in view of our other holdings, in the cases before cited, that it is generally held that such a devise is only a life estate. We think it is true where, as in the instant case, the will devises a fee-simple title to the widow provided she remains unmarried, does devise a fee. And such, we think, was the meaning by Mr. Justice Bishop in his statement just quoted; for he cites, to sustain his proposition, *Becker v. Becker,* 206 Ill. 53 (69 N. E. 49), *Redding v. Rice,* 171 Pa. St. 301 (33 Atl. 330), *Squier v. Harvey,* 16 R. I. 226 (14 Atl. 862), 1 Underhill on Wills, Secs. 506, 507. An examination of these cases shows that, in every one of them, while it was held that a fee was created, it was a qualified or defeasible fee, and not a fee-simple title. Thus, in the *Becker* case, where the provisions of the will were, substantially,

that testator devised all of his realty to his wife, and, with the exception of certain specific bequests, bequeathed to her all his personalty, declaring that she was to have full charge of the estate, without any restriction of any nature, and further, that she was never to marry again, and that, if she did, his estate was to be divided equally between her and his brothers, it did not reduce to a life estate the fee theretofore given. The court said:

"The estate taken by the appellee widow is a fee, because, in the absence of remarriage, it will endure forever in her and her heirs. The restriction against her remarriage qualifies her estate, and it is, therefore, a qualified or base fee. Until determined by her remarriage, she has the same rights and privileges over the estate as if it were a fee simple absolute, save that the determinable quality of the estate will follow any conveyance thereof by her. [Citing cases.] It did not appear from the appeal that the appellant had any present interest in the real estate. The contingency upon which he may succeed to an interest in the real estate has not happened, and may never happen."

In the *Redding* case, testator gave his property to his widow "for her own proper use and behoof as long as she shall remain my widow, and if she should get married, then she shall be only entitled to the one third in said property, the balance, being two thirds, to my youngest daughter Kate; if the said Kate should die, then I will and bequeath the two thirds to my son William, and if both should die, then the residue remaining shall be equally divided among any remaining children. * * *" Held that the whole estate was given to the widow in fee, subject to the condition that she should not marry again, and defeasible as to two thirds upon the breach of that condition.

In the *Squier* case, testator gave to his wife all his estate, real and personal, with certain exceptions, forever, as long as she should remain his widow; but in case she

should marry again, he gave all his real estate to J. Held. The widow took the entire estate, after the payment of debts and legacies, subject to defeasance by her marriage.

In Underhill on Wills, cited by Judge Bishop, Sec. 506, it is said, among other things:

"The limitation by the testator of an estate in lands to his widow during widowhood, or, in express terms, 'while she remains a widow,' 'as long as she remains unmarried,' 'until her marriage,' or in any similar language, is unquestionably valid. Such a limitation is not regarded as in restraint of marriage. The testator has an interest in providing that his widow shall not remarry. Nor is it at all inconsistent with public policy to restrain second marriages under all circumstances, however much it may be advisable to promote marriage in general. In very many cases, the testator leaves young children who must be cared for by someone, and what person can be more competent to attend to their moral culture, rearing and education than their mother? * * * Hence, whether we regard the estate during widowhood as an estate upon limitation, or as an estate upon condition subsequent restraining remarriage, it is unquestionably valid in either case. Nor is it material that there is no gift over upon the remarriage of the widow."

And it is said, in Section 507 of the same work:

"If the testator gives his widow an estate during widowhood, or if he gives her, in express terms, an estate during her life, which is to cease on her remarriage, and she takes under his will, she has no cause to complain that, on her remarriage, she loses the estate which was given her conditionally. On her remarriage, the estate absolutely ceases and goes to the devisee over, or to the heirs or next of kin of the testator. * * * No rule of law prevents the testator from giving her a fee simple in lieu of dower, which shall be defeasible and shall go to others on her remarriage. * * * If she conveys the fee, her grantee

takes it also subject to being defeated by her remarriage. But if she dies without having remarried, the fee descends to her heirs, and the devise over is defeated."

In *Cummings v. Lohr*, 246 Ill. 577 (92 N. E. 970), the will devised and bequeathed to testator's wife all the realty and personalty of which he might die seized, "provided she remains my widow; but should she marry, then all the property shall go to my children that are alive," except a life estate in one third of the land. It was held that the widow took a conditional or base fee, subject to be terminated by her marriage. That case was made to turn, in part at least, upon a statute of Illinois, which provides that:

"Every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law."

We have a statute somewhat similar as to conveyances. Code Section 2914.

In the *Cummings* case, the court said:

"The words of the devise are sufficient to pass the fee to the widow, and the proviso merely annexes a condition which converts the fee simple into a conditional or base fee, subject to be terminated by her marriage. * * * The will gave to the widow a qualified fee in all the land of which the testator died seized, subject to be terminated by her marriage. The plaintiff in error has no present estate in any of the land, but only an expectancy. No estate will vest in her, except in the event of the marriage of Louisa Lohr. * * * There can be no partition of an expectancy, and the appeal should, therefore, have been dismissed."

In *McFarland v. McFarland*, 177 Ill. 208 (52 N. E. 281),

it was held that a will devising testator's estate, without words of limitation, and subject to a personal charge, to be held and enjoyed by the devisees indefinitely, unless they desired to terminate their interest, which they could do by a written instrument signed by at least two of them, passed an estate in fee, and determinable only in the manner prescribed.

We are of opinion that, under these authorities and the *Becker, Redding*, and *Squier* cases, supra, the widow, under the will in question, took a fee, but that it is a defeasible fee. Without taking the time or space to review further cases so holding, the following cases may, be cited: *Fidelity Trust Co. v. Bobloski*, 228 Pa. St. 52 (28 L. R. A. [N. S.] 1093), and note; 40 Cyc. 1593,—where it is said, "A devise to a woman, which is absolute except for a provision against marriage, creates a qualified or defeasible fee, subject to be divested only by her marriage," citing a large number of cases. See also *In re Biles' Will*, 151 N. Y. Supp. 1097.

In the case of *Cummings v. Lohr*, supra, the court distinguished between the words "provided" and "while," saying that "while" is merely an adverb expressing duration, and that "provided" is an apt word to express a condition. The will in the instant case uses the words, " 'so long' as she will be my widow and not marie again." But in the *McFarland* case, supra, devisees were to hold property "so long as they shall carry on and conduct the business for which the real estate above mentioned is peculiarly and particularly adapted, viz., the care and treatment of the insane." And, as before stated, it was there held that the estate taken was a defeasible fee. The words are the same as in the instant case. See also, on this point, 1 Underhill on Wills, Sec. 506, from which we have before quoted, where the words "while," "as long," "until," etc., are used.

We are of opinion that the trial court correctly con-

strued the will as giving to the widow a defeasible fee, and that such holding ought to be, and it is, affirmed. But, though the point is not made, we think that, under the circumstances, the judgment should be without prejudice to the right of defendants to relitigate their claim to their share in the remainder, in case the widow should remarry. The judgment should likewise be without prejudice to plaintiffs to relitigate their claim to the property as grantees of the widow should she die without remarrying, should their title be questioned. It may not be necessary for us to preserve such rights, because only questions presented are adjudicated; and we do not in this case determine the rights of plaintiffs under their deeds in case the widow dies without a remarriage, or the rights of defendants should she remarry. Under the authorities, some of which have been quoted, the parties have no present interest in the real estate. Whether they ever will, depends on the question as to whether the widow does or does not remarry.—*Affirmed.*

WEAVER, EVANS, and GAYNOR, JJ., concur.