(No. 27042.— )

IDA E. ROSE RICHARDSON *et al.;* Appellants, *vs.* RACHEL E. PARKER RONEY *et al.*—(The Citizens National Bank of Decatur *et al.*, Appellees.)

*Opinion filed March 18, 1943.*

STEVENS & WILLIAMS, DENZ & BUCKNER, and EVANS & KUHLE, for appellants.

GEORGE F. BARRETT, Attorney General, and VAIL, MILLS & ARMSTRONG, for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellants filed a complaint in the circuit court of Macon county seeking partition of certain real estate therein described. On motions of the appellees the complaint was dismissed as not stating a cause of action.

Whether the chancellor was right in dismissing the appellants' complaint is to be determined by a construction of clause seven of the will of James S. Parker, who died May 8, 1880, leaving a substantial amount of real estate. He was survived by his widow and five children, three sons and two daughters. Lydia E., the youngest, was unmarried, the rest were married at the time of making the will. After leaving a life estate to his widow, he devised certain lands to each of his five children; to the sons he devised the lands in fee; to his married daughter, Sarah J. Stouten-

borough, he gave a life estate with remainder to her children who survived her, subject to a life estate also in her husband if he survived Sarah. The widow died in 1899. Sarah died intestate in 1894, survived by three sons, Charles W., John S., and James P. Stoutenborough.

To Lydia E. the testator, by the seventh clause, devised the farm lands involved in this suit, and a homestead in Maroa, Illinois. To this devise there was attached this provision: "I further desire and give devise and grant all the real estate named in this item to pass & vest in the children of the said Lydia E. Parker if any who may survive her after her death, should the said Lydia E. Parker die leaving no children surviving her then it is my will that the title to the real estate named in this item to vest in fee simple in the brothers & sisters and their heirs, of her the said Lydia E. Parker who may survive her."

In December, 1899, the three sons of the testator and the three sons of the deceased daughter Sarah, quitclaimed to Lydia E., (then Lydia E. Bates, she having married,) all of their interest in the farm lands and the Maroa property devised to Lydia for life. All were adults and their respective spouses joined in the conveyance. Lydia thereafter conveyed a railroad right of way; also conveyed a strip to the State for a highway, and granted an easement for an electric transmission line. She died in 1941, having outlived her father by more than sixty years. She left no surviving issue. Her three brothers and her sister had all died. She made a will by which she devised the farm lands to trustees to convert into cash and pay the proceeds to the Trustees of the University of Illinois to establish a foundation or charitable trust, to be known as "The Lydia E. Parker Bates Fund for the Advancement of Fine Arts."

Appellants say first that they, by the language of the will, were designated together with Lydia's brothers and sister as the particular persons who were to succeed to

the title in case she left no child surviving; that the words "and their heirs" were words of purchase and not of limitation, and that as children and heirs of the brothers and sister of Lydia they are entitled to this property; and, second, if this be not true, then, since none of the brothers or sister survived Lydia, the remainders that were to have gone to them on the contingency of survival, remained in the estate of the testator, and never having been divested, they, as heirs of the testator, are entitled to at least a one-fifth interest in the land because the contingent remainders were not destroyed or released by the conveyances made by their ancestors. In other words, it is urged that both aspects of the contingent remainder created by the seventh clause of the will having failed, and the words "their heirs" having been used as words of purchase, the title to the land thus described vested in appellants immediately upon the death of Lydia, the life tenant.

A rule governing the construction of wills is that the intention of the testator, as expressed in and gathered from the four corners of his will, controls, unless some rule of law is violated. (*Leary* v. *Kerber,* 255 Ill. 433; *Armstrong* v. *Barber,* 239 id. 389; *Mosier* v. *Bowser,* 226 id. 46.) Counsel for appellants seem to concede that by the language of the will here under consideration, if any brother or the sister of Lydia had survived her, such survivor or survivors would have taken the fee-simple title to the real estate described in that item. The devise over, after the termination of the life estate devised to Lydia, in case of no survivor, gives rise to the question whether the words "and their heirs" are words of limitation or of purchase. Appellants' counsel concede that if those words are to be construed as words of limitation, appellants have no interest in the premises and the decree of the chancellor was correct. But appellants say those words were used as words of purchase and that they, as heirs of the deceased brothers and sister of Lydia, are by those words described as particular

persons who are to take and those words were not used as designating the amount of estate given.

The rule commonly known as the rule in *Shelley's case,* is that where an ancestor takes an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, either in fee or in fee tail, the word "heirs" is a word of limitation of the estate granted and not a word of purchase. This is a rule of law and not one of construction of the will or intent of the testator. This rule is firmly fixed in this State. (*Lord* v. *Comstock,* 240 Ill. 492; *Ward* v. *Butler,* 239 id. 462; *McFall* v. *Kirkpatrick,* 236 id. 281; *Baker* v. *Scott,* 62 id. 86; Kale's Future Interests, chap. 3.) It has also been long settled in this State that the rule in *Shelley's case* controls against the testator's manifest intent.

Appellants' counsel concede the rule is in force in this State but contend that it does not apply to contingent remainders and therefore it does not apply to the devise under the will before us. They cite in support of that position *Gehlbach* v. *Briegel,* 359 Ill. 316. That case involved a deed by which the grantor conveyed a quarter section of land to his daughter and her husband. The *habendum* contained the following words: "For and during their lifetime, then to the heirs of the body of our daughter, Henrietta Ann Briegel, and if she leaves no child or children surviving her, then to her heirs according to law." The daughter died never having had a child. She by will devised all of her real estate to her husband. A son of the grantor filed a bill for partition alleging that he and other heirs of the grantor owned the fee subject to the life estate of Gustav Briegel, husband of Henrietta Ann. It was also argued in that case that the rule in *Shelley's case* did not apply; that the deed created two life estates with alternative contingent remainders and the fee remained in the grantor during his lifetime, descending to his heirs after his death, and not vesting until after the determination,

by the death of Henrietta, of the contingency as to the ultimate taker. In the opinion in the case, *Bails* v. *Davis,* 241 Ill. 536, was cited as holding that the rule in *Shelley's case* does not apply where the remainder is contingent. The deed construed in that case was "to Joseph Kretzer and Mora Kretzer, his wife, during their natural lives and after their death to the heirs of said Joseph Kretzer." It was held that the deed conveyed to Joseph and Mora Kretzer an estate, as tenants in common, during their joint lives with remainder in fee to Joseph Kretzer. It is a misconception of that holding to say that it is support for the position that the rule in *Shelley's case* does not apply to contingent remainders. There was no contingent remainder in that case. The rule in *Shelley's case* was applied.

In *Boon* v. *Boon,* 348 Ill. 120, cited in the *Gehlbach case* as authority for the holding that the rule in *Shelley's case* does not apply to contingent remainders, the devise of the remainder was in the following language: "And at his death [the life tenant's,] it is my will that the fee in said premises shall vest in the heirs of the body of said Elvin E. Boon. Provided, that if said Elvin E. Boon should die without children or descendants of children then said land at his death shall vest in his heirs-at-law and provided, that if any child or children, born to the said Elvin E. Boon shall die before his death leaving a child or children then such child or children shall take under this clause the same interest in said premises that the parent would otherwise have taken." It will be observed that in the two cases cited in the *Gehlbach case,* the child or children of the life tenant, if any, were to take upon the death of the life tenant, and, upon failure of any, the remainder was then to go to the heirs of the life tenant. The cases cited in the *Gehlbach opinion,* as supporting the holding that the rule in *Shelley's case* does not apply to contingent remainders, do not afford such support, and the holding to that effect in the *Gehlbach case* is not adhered to. It is

immaterial to the application of the rule in *Shelley's case* whether the limitation is to give a vested or contingent interest. Preston's Estates, p. 266; see also *Ryan* v. *Allen,* 120 Ill. 648; Kale's Future Interests (2d ed.) sec. 440; 2 Washburn Real Property (6th ed.) 562.

The rule in *Shelley's case* is in force in this State and applies to the limitation of a remainder to heirs generally. (*Cook* v. *Sober,* 302 Ill. 498; *Hollenbaugh* v. *Smith,* 296 id. 558; *Fowler* v. *Black,* 136 id. 363; *Carpenter* v. *Van Olinder,* 127 id. 42; *Baker* v. *Scott, supra.*) The word "limitation" in law defines the extent or quality of an estate conveyed or devised, and where a limitation is to "heirs-at-law" they take by descent, and the statute is resorted to to determine the persons upon whom the law casts that estate at the death of the ancestor. The heirs contemplated by the law are heirs of the whole line of inheritable blood who are to take from generation to generation as heirs of the one who takes the particular estate. The word "heirs" is a technical word with a fixed legal meaning, and unless controlled by qualifying words so as to describe a different class of heirs from those who would take a remainder by virtue of the Statute of Descent, it must be interpreted according to its strict technical meaning. (*Cook* v. *Sober, supra; Richards* v. *Miller,* 62 Ill. 417; *Rawson* v. *Rawson,* 52 id. 62.) The word "heirs," being a technical word of known legal import, will be given its legal effect when used in a will, even though the testator uses inconsistent words, unless such inconsistent words are of such a nature as to make it perfectly clear that the word "heirs" was not used in its proper legal sense. *Cook* v. *Sober, supra; Griswold* v. *Hicks,* 132 Ill. 494.

In this case counsel for appellants say that the language of the will is sufficient to show that the rule in *Shelley's case* could not apply. They say that the language "the title to the real estate named in this item to vest in fee simple in the brothers & sisters and their heirs, of her the

said Lydia E. Parker who may survive her," shows that there was described not the estate devised but the particular persons who were to take, and that this was a contingent gift over to a class composed not only of the brothers and sister but also of their heirs, which class was to be determined at the date of the death of Lydia. Counsel cite no authority for the position that an ancestor and his heirs can, without more, constitute a class of purchasers. Nor are we able to see how both could be said to take at the same time. No one has heirs during lifetime. If one takes in substitution for the other, there can be no class. It will be remembered that here a contingency is imposed whether anyone shall take. That contingency is that he survive the life tenant. If he does not survive neither he nor his heirs can be said to take.

It is also clear that in referring to those who are to take on condition that they survive Lydia, the testator was referring to Lydia's brothers and sister. The language clearly so shows. The words "of her the said Lydia E. Parker who may survive her," clearly refer to the brothers and sister "of her" the said Lydia E. Parker. They were the ones who were to survive in order to take. The word "who" refers to the brothers and sister and not the heirs, because the heirs are not described as heirs "of her the said Lydia E. Parker," and they were not her heirs. It seems clear that the words "who survive Lydia," refer to the brothers and sister who had to survive to take. Since this is true, those, if any, who did survive, took the fee because the devise was to them and their heirs. If the brothers or the sister did not survive Lydia, they took nothing, and therefore their heirs took nothing. It is clear from the language of the will that the words "and their heirs" were used to designate those who were to take in succession from generation to generation from the brothers and sister and not to designate a class of persons to take an estate different from what the law would have cast upon them

as heirs, and so the limitation to the heirs was used in the technical sense. The will contains no language that tends to indicate an intention that anyone other than the brothers and sister of the life tenant who survived her should take on her death. It follows that the words "and their heirs" are words of limitation and not of purchase and the rule in *Shelley's case* applies.

The will contains no specific devise of the remainder, to vest in case the contingent remainders should fail, and so the reversion in fee descended to the heirs-at-law of the testator as intestate property, not to those who were heirs-at-law at the time of the death of the life tenant but those who were the heirs-at-law at the time of the testator's death. *Harrison* v. *Weatherby,* 180 Ill. 418.

In the residuary clause of the will before us the residuary devisees and legatees were the same as the testator's heirs-at-law, hence it is unnecessary to determine the effect of the residuary clause upon the fee in the land before us. The reversion in fee, upon the death of the testator, vested in his heirs-at-law at the time of his death, to await the happening of the contingency, and the interest of each of his heirs-at-law would pass to his or her assigns subject to being divested if the contingency should happen. (*Peterson* v. *Jackson,* 196 Ill. 40.) So when all of the brothers and their spouses and the children of the deceased sister and their spouses quitclaimed their interest to Lydia, they conveyed to her what interest they had in the reversion, thus vesting the fee in her. At the time of her death, Lydia was the sole owner of the fee in these lands and it passed to the devisees under her will. *Wood* v. *Chase,* 327 Ill. 91; *Greenfield* v. *Lauritson,* 306 id. 279; *Bender* v. *Bender,* 292 id. 358; 1 Fearne on Remainders, sec. 354 *et seq.*

The decree sustaining appellees' motions and dismissing appellants' suit for want of equity was right and is affirmed.

*Decree affirmed.*