(No. 30764.—

FABIAN GEORGE CAHILL *et al.*, Appellants, *vs.* MARY CAHILL, *et al.*, Appellees.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

L. O. EAGLETON, and ROBERT G. DAY, both of Peoria, for appellants.

BARTLEY & BARTLEY, of Peoria, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a suit in equity filed in the circuit court of Peoria County for the partition of 200 acres of farm lands belonging to Peter Cahill, now deceased, and for the construction of his will. The case hinges solely on the construction to be applied to the third clause of the will which is the only clause before us for consideration on appeal. The clause reads as follows: "I give and devise to my nephew, Alexander P. Cahill, of Brimfield, Ill., the following: The South Half of the Southwest Quarter of Section Thirty (30), and the Northeast Quarter of the Southwest Quarter of section Thirty (30) and the Southwest Quarter of the Southeast Quarter of Section Thirty (30), all in Township Ten (10) North, Range Six (6) East of the 4th P.M., and the Southeast Quarter of the Southeast Quarter of Section Twenty-five (25), in Township Ten (10) North, Range Five (5) East of the 4th P.M., all of above described land being in the County of Peoria, and State of Illinois, upon the death of said Alexander P. Cahill said described property to become the property of his Heirs of Blood."

Alexander P. Cahill died testate January 6, 1947, leaving neither widow nor descendants. His heirs were his mother, Mary Cahill, his sister, Mary Cahill Roy, and the appellants, who are the children of his deceased brother, George Cahill. By his will he devised and bequeathed his entire estate to his sister, Mary Cahill Roy.

The appellants alleged in their complaint that the heirs-at-law of Alexander were Mary Cahill, his mother, Mary

Cahill Roy, his sister, Fabian George Cahill, his nephew, Rita Rosella Cahill Reinhardt, his niece, and Roderick Francis Cahill, his nephew; that each of said persons is an heir of blood of Alexander and together constitute his only "Heirs of Blood," and pray that the third paragraph of said will be construed to give Alexander a life estate and that upon his death the real estate vest in said "Heirs of Blood" in the following proportions, to-wit: Mary Cahill, an undivided one-third, Mary Cahill Roy, an undivided one-third, and Fabian George Cahill, Rita Rosella Cahill Reinhardt and Roderick Francis Cahill, an undivided one-ninth each, and prays that a decree for partition be entered. The complaint also alleges that Fabian George Cahill, Rita Rosella Cahill Reinhardt and Roderick Francis Cahill are the children of George Cahill, deceased, who was a brother of Alexander and who predeceased the said Alexander.

The appellees, Mary Cahill and Mary Cahill Roy, answered denying that the will of Peter Cahill devised only a life estate to Alexander P. Cahill and denying that the remainder vested in his heirs of blood at his death. Their answer further alleged that Alexander received a fee-simple title under said will but alleged that if the court should construe the will as giving Alexander only a life estate and the remainder to his heirs of blood, then, under such construction, the respective interests of such remaindermen were not as set up in the complaint, but that the appellee Mary Cahill would be seized of an undivided one-half, the appellee Mary Cahill Roy an undivided one-fourth, and each of the appellants an undivided one-twelfth thereof.

Appellee Mary Cahill Roy filed a counterclaim and asked for a construction of Peter Cahill's will, declaring that under and by virtue thereof the fee-simple title vested in Alexander P. Cahill.

The trial court decided the case on the pleadings, briefs and argument of counsel and held that the rule in *Shelley's case* applied to the third paragraph of the will of Peter

Cahill, and that by operation of said rule, Alexander P. Cahill received a fee-simple title to the premises which passed to the appellee Mary Cahill Roy, under the will of Alexander P. Cahill, upon his death, vesting in her fee-simple title.

It is contended by the appellants that (1) the court erred in overruling the plaintiff's motion to dismiss the amendment to answer and counterclaim. (2) The court erred in ruling that the rule in *Shelley's case* applied to the third paragraph of Peter Cahill's will; in holding that Alexander P. Cahill received a fee-simple title under the will of Peter Cahill; in holding that the defendant Mary Cahill Roy was now the fee-simple owner of the premises referred to in the third paragraph of the will; in dismissing the plaintiffs' complaint for want of equity and in ordering the defendant Wayne H. Mathis to account and pay over to the defendant Mary Cahill Roy the net proceeds of the rents and profits derived from said real estate. (3) The court erred in assessing the costs against the plaintiffs.

Appellees contend that (1) the third clause of Peter Cahill's will constituted an absolute devise to Alexander Cahill of the fee-simple title to the real estate therein described, and that the circuit court properly construed the will accordingly. (2) The circuit court properly dismissed the complaint for partition for want of equity. (3) The circuit court did not err in assessing the costs against the appellants. (4) The decree of the circuit court is in all respects correct and should be affirmed.

It is urged that the devise to Alexander comes within the rule in *Shelley's case* and further that the will should be construed as devising to Alexander an estate in fee by reason of the provisions of section 13 of the Conveyance Act, and upon the fact that by the fifth clause of the will the testator bequeathed to his brother, James W. Cahill, an annuity of $300, and made the same a lien upon the real estate devised to the testator's nephew George by the second

clause of the will and that devised to his nephew Alexander by the third clause, the testator expressly stating that in making the bequest a lien he intended thereby "that each of my said nephews, George and Alexander P. Cahill, shall pay to said James W. Cahill one-half of said annual legacy herein willed to him."

The first question for consideration is the character of the estate, whether for life or in fee, which the testator intended to devise to his nephew, Alexander. If it is manifest from the construction of the will as a whole, giving due weight to all the language used therein and every provision thereof, that the testator intended to confer on Alexander an estate in fee, then it is unnecessary to consider the rule in *Shelley's case.* This court has often held that the object to be attained in construing a will is to first ascertain the intention of the testator and then when such intention is ascertained, to give effect thereto if not in violation of public policy or some positive and established rule of law. (*Hayden* v. *McNamee,* 392 Ill. 99; *Murphy* v. *Westhoff,* 386 Ill. 136.) The rule in *Shelley's case* is a rule of law and not a rule of construction. (*Richardson* v. *Roney,* 382 Ill. 528.) The rule, which is venerable for its antiquity, is that if an estate of freehold be limited to "A" with remainder to his heirs, general or special, the remainder, although importing an independent gift to the heirs, as original takers, shall confer the inheritance on "A," the ancestor. (*Lydick* v. *Tate,* 380 Ill. 616.) Another statement of the rule is that where an ancestor takes an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, either in fee or in fee tail, the word "heirs" is a word of limitation of the estate granted and not a word of purchase. (*Richardson* v. *Roney,* 382 Ill. 528.) The rule in *Shelley's case* was a part of the common law of England, adopted by the legislature of this State in 1819, (*Baker* v. *Scott,* 62 Ill. 86,) and except as partially repealed by section 6 of the

Conveyance Act, (Ill. Rev. Stat. 1947, chap. 30, par. 5; *Butler* v. *Huestis,* 68 Ill. 594,) is still in force in this State. It takes effect regardless of the intention of the testator and in cases to which it is applicable requires the court to decide that the first taker is entitled to a fee and thereby to set at naught the clearly expressed intention of the testator to give him only a life estate. *Connor* v. *Gardner,* 230 Ill. 258.

Section 13 of the Conveyance Act provides that every estate in lands which shall be granted, conveyed or devised, although words formerly necessary to transfer an estate of inheritance be not added, shall be deemed a fee-simple estate of inheritance, if a less estate be not limited by express words, or does not appear to have been granted, conveyed or devised by construction or operation of law. (Ill. Rev. Stat. 1947, chap. 30, par. 12.) Before the passage of this act, the word "heirs" or an equivalent word was necessary in a grant, conveyance or devise to transmit the inheritance, and if such word was omitted a life estate only was created. (*Baker* v. *Scott,* 62 Ill. 86.) To create an estate of inheritance at common law, it was necessary that the instrument of conveyance contain the word "heirs." (*Sauls* v. *Cox,* 394 Ill. 81.) Under the statute, if such words be omitted the fee passes to the grantee or devisee, if a less estate be not limited by express words, or does not appear to have been granted, conveyed or devised by construction or operation of law.

In the instant case the testator did not by express words limit the devise to Alexander to an estate for life only, but it is evident that he did not intend to give him anything more than a life estate. This is shown by the fact that he devised other lands to another nephew, George Cahill, who was a brother to Alexander and the father of appellants, adding to the devise the words "said property to become his to do with as he may desire." This is a strong indication that the testator appreciated the difference between a fee simple

and an estate for life, and that he intended his nephew George to have an estate in fee simple. The devise to George when considered in connection with the provision annexed to the devise to the nephew Alexander, that "upon the death of said Alexander P. Cahill said described property to become the property of his Heirs of Blood" indicates that he did not intend George and Alexander to have estates of the same character, but intended George to take an estate in fee simple and Alexander to take a life estate.

It is urged by appellees that the fifth clause of the will imposed a personal liability upon Alexander and is therefore sufficient to establish that he was devised a fee. This paragraph reads as follows: "I give to my brother, James W. Cahill, of Los Angeles, Cal., an annuity of Three Hundred (300) Dollars, to be paid him in quarterly installments of equal amounts during each year of his natural life. And I hereby make said bequest given to my said brother, James W. Cahill, a lien on the real estate hereinbefore willed respectively to my nephews George Cahill and Alexander P. Cahill, intending hereby that each of my said nephews, George and Alexander P. Cahill, shall pay to said James W. Cahill one-half of said annual legacy herein willed to him, in quarterly installments, as provided in said will, and this to continue until the death of said James W. Cahill; and said liens hereinabove constituted shall continue during the lifetime of said James W. Cahill."

Counsel, in support of their contention that this paragraph is sufficient to vest the fee in Alexander, cite the cases of *McFarland* v. *McFarland,* 177 Ill. 208; *Hempstead* v. *Hempstead,* 285 Ill. 448; and *Churchill* v. *Fleming,* 358 Ill. 433. The opinion in the *McFarland case* contained the statement that at common law, though a devise contained no words of limitation or inheritance, it was implied to confer a fee if the payment of a debt or legacy was charged upon the devisee personally. The *Hempstead case* contained the statement that where there is a large charge imposed by

the will upon a devisee or where a devise in a will is made subject to the payment of specified sums to other beneficiaries, such fact, while not conclusive, is necessarily strong evidence of an intent of the testator to pass by his will a fee to such devisee, as the devise might not otherwise prove a beneficial interest. In the *Churchill case,* the appellant, to support his claim that the devise to him of the use, rents and possession of the testator's farm was the devise of an estate in fee, argued that the will charged him personally with the payment of $1000 to his sister, that under the general rule, where a legacy is charged against a devisee personally and not against the interest devised, the devise will be construed to pass the fee, and that this rule, aided by the presumption that the testator did not intend to die intestate as to any part of his property, transferred the fee to him. This court construed the will as making the legacy to appellant's sister a personal charge against appellant and not a charge against the land or the interest devised, and held that under the rule, as stated by appellant, and under the presumption against intestacy, the will should be construed as devising to appellant the fee.

The rule that where a gift is made subject to a personal charge against a devisee this tends to show the testator meant to pass a fee simple to such devisee is a rule of construction, the reason for the rule being that otherwise the devise might not prove a beneficial interest. (3 Page on Wills, 1089; *McFarland* v. *McFarland,* 177 Ill. 208.) We think, however, in any event, the will here, properly construed, passed only the life estate.

It necessarily follows, since the will, when properly construed, discloses that the testator did not intend to devise to Alexander an estate in fee simple, but intended to give him an estate for life only, with remainder to his heirs of blood, the serious question presented is whether the rule in *Shelley's case* applies enlarging Alexander's life estate into an estate in fee simple. The rule in *Shelley's case* has been

stated in many different forms, none of which are essentially different.

One of the requisites of the rule in *Shelley's case,* and essential to its operation, is that the limitation of the remainder must be to the heirs of the first taker by the name of heirs as meaning a class of persons to succeed to the estate from generation to generation, and not to heirs as meaning or explained to be individuals, such as sons, children, or the like, of the person taking the first estate. (*Baker* v. *Scott,* 62 Ill. 86.) It is the nature of the estate intended to be given to the heirs, whether given them as heirs of the first taker, by inheritance through him as the stock of descent, or whether given them as grantees or devisees who take an original estate in their own right, so as to be themselves the stock from which the inheritance is derived, that determines the application of the rule. (*Churchill* v. *Marr,* 300 Ill. 302; *Winter* v. *Dibble,* 251 Ill. 200.) The word "heirs" indicates all those persons who upon the death of the immediate ancestor succeed to the estate from generation to generation. (*Churchill* v. *Marr,* 300 Ill. 302.) It is a technical word with a fixed legal meaning, designating those who would take a remainder by virtue of the Statute of Descent. (*Cook* v. *Sober,* 302 Ill. 498; *Depler* v. *Dyer,* 312 Ill. 537.) The rule is, that when the word "heir" or "heirs" is used in a will and there is nothing in the context explaining or controlling its use, or showing a different intention on the part of the testator, it must be interpreted according to its strict and technical import, and when thus construed, it includes and designates all those persons, whether few or many, upon whom the law would cast the inheritance in case of intestacy. (*Ryan* v. *Allen,* 120 Ill. 648.) It has been determined that where to the word "heirs" other words are added which so limit its meaning that it does not include the whole line of inheritable succession but only designates the individuals who are at the death of the ancestor to succeed to the estate and who

are themselves to constitute the source of future descent, then the rule in *Shelley's case* does not apply, but the estate limited to the heirs takes effect as a contingent remainder granted or devised to such heirs as purchasers. The language of the deed or will may indicate that the word "heirs" was not used according to its legal import, to include and designate all those persons who, upon the death of the life tenant, inherit from him as the stock of descent, but was used in a restricted and untechnical sense to designate individuals to whom a distinct estate was given and from whom, as its origin, the descent is to be derived. *Kaup* v. *Weathers,* 302 Ill. 569.

It is unnecessary and would only burden this opinion to point out the numerous cases under different situations in which the rule in *Shelley's case* is applied or denied. We are, however, of the opinion the decisions of this court hold that where in a grant or devise of a particular estate to an ancestor with a limitation in remainder to his heirs, there are added to the word "heirs" other words indicating that the heirs named as remaindermen do not include all persons who inherit as heirs or that they take as remaindermen a different estate from that which the law would give them as heirs, then the rule in *Shelley's case* does not apply, but the grant or devise to the heirs takes effect as a contingent remainder to vest in the heirs as purchasers upon the termination of the particular estate. The will in this case devises a life estate to the testator's nephew, Alexander, and the remainder to his heirs of blood. Citation of authority or the persuasion of argument is unnecessary to show that such heirs are only those of his heirs who are related to him by consanguinity and would not include his widow, although the statute of this State has always, under certain conditions, made the widow an heir of her deceased husband, *(Bundy* v. *Solon,* 384 Ill. 137,) nor include an adopted child, whom the statute puts on an equality with

children by birth for the purpose of inheriting from the adopting parent. (*Wallace* v. *Noland*, 246 Ill. 535.) The devise here is of a life estate and the remainder is not granted to the heirs generally of the life tenant, but to a restricted class of his heirs. The words "his Heirs of Blood," used in the will, are not words of limitation denoting the extent and character of the estate granted to the first taker, but are words of purchase, descriptive of the persons who are to take the remainder upon the termination of the life estate. The words "of blood" which are annexed to and follow the words "his heirs" would have to be held meaningless to construe the devise of the fee as one to the heirs generally of Alexander. We are not justified in ignoring the quoted words or construing them contrary to their plain and natural meaning in order to bring the devise within the rule in *Shelley's case* and thereby defeat the intention of the testator. The rule in *Shelley's case* cannot be here invoked and there is no rule of law that prevents the carrying out of the testamentary intent.

The next question pertains to the interpretation of the will to determine the amount or proportion that each of the life tenant's heirs of blood take as devisees of the remainder. This court has held that unless the intention of a testator is clearly manifest in his will, the courts construe a gift of property to a specified class as contemplating a division in analogy to the Statute of Descent. (*Dollander* v. *Dhaemers*, 297 Ill. 274.) The law favors that construction of a will which conforms most nearly to the general law of inheritance. (*Dahmer* v. *Wensler*, 350 Ill. 23.) Where there is an ambiguity in a will so that a contrary manifest intention does not appear, the presumption that the testator intended his property should go in accordance with the laws of descent and distribution will be applied as an aid in construing the will. (*Condee* v. *Trout*, 379 Ill. 89; *Dahmer* v. *Wensler*, 350 Ill. 23.) While a testator is allowed to

ignore, either in part or altogether, the rules laid down in the statute as to where the estate of a decedent shall go, it will not be presumed that it was his intention to disregard the law as it is contained in the statute in any part, unless the terms of the will are such as to make this intention manifest. (*Dollander* v. *Dhaemers,* 297 Ill. 274.) In the instant case the life tenant, Alexander, upon his death left no heirs other than his heirs of blood. The will contains nothing indicating the proportion in which his heirs of blood were to take, and consequently they are to take the property in accordance with the provisions of the Statute of Descent.

The final contention is that the trial court erred in assessing the costs against the appellant. Under the statute of this State, costs in chancery cases, except where the plaintiff dismisses his own suit, or where the defendant has the suit dismissed for want of prosecution, rest in the discretion of the court. (Ill. Rev. Stat. 1947, chap. 33, par. 18.) This discretion, however, must be exercised according to equitable rules and principles, or otherwise it is subject to review. (*Highley* v. *Deane,* 168 Ill. 266.) The general rule is that where a will is so ambiguous and uncertain that its construction by a court of equity is required to determine which of two or more adverse claims is valid, the cost of the litigation should be borne by the estate, (*In re Estate of Reeve,* 393 Ill. 272,) except where the construction of the will concerns only the disposition of part of testator's property, or a particular fund, in which event the costs of construing the will should be charged against the property or fund. (*Appleton* v. *Rea,* 389 Ill. 222.) We are of the opinion the facts here justify the costs being taxed against, and paid by, the estate.

We have arrived at our determination in this case after an examination of many cases wherein the age-old rule in *Shelley's case* has been invoked. We have not found, and no authority has been cited, wherein the phrase "his Heirs

of Blood" has been construed by this court and it has presented much difficulty of solution. From our analysis, however, of the instrument containing these words of direction, we are of the opinion the decree of the circuit court of Peoria County should be reversed. The cause is therefore remanded to that court, with directions to render a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE DAILY took no part in the consideration or decision of this case.