NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190263-U

NO. 4-19-0263

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LOREN FREED, MARILYN WAGNER, CYNTHIA HICE, JARED WAGNER, LEAH WAGNER, LINDSAY WAGNER, ROSEMARY FREED, MICHAEL WILLIAMSON, ANDREW KROMINGA, JERRY FREED, JODIE MARCANTONI, CLAYTON FREED, BEN FREED, SARA FREED, DYLAN FREED, LAND TRUST DATED DECEMBER 27, 1978, KNOWN AS THE LOREN E. FREED TRUST NUMBER 1; LAND TRUST DATED MARCH 27, 1980, KNOWN AS THE LOREN E. AND SHIRLEY FREED LAND TRUST NUMBER TWO; THE LOREN E. AND SHIRLEY FREED FAMILY RUST DATED MARCH 27, 1980; LAND TRUST DATED DECEMBER 21, 1994, KNOWN AS LEF-4 AND LAND TRUST DATED JUNE 12, 2000, KNOWN AS LAND TRUST MR.BJD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of McLean County No. 14CH257 |
| Plaintiffs, | ) | |
| v. | ) | |
| BRIAN FREED, FREED ACRES, LLC, BRUCE FREED, ALLISON KEERAN, AND EVERGREEN FS, INC., | ) ) ) | |
| Defendants | ) | |
| | ) | |
| (Ben Freed, Sara Freed, Dylan Freed, and Julie Freed, Individually and as Executor of the Estate of David Freed, Plaintiffs and Cross-Plaintiffs-Appellees; Marilyn Wagner, Cynthia Hice, Jared Wagner, Leah Wagner, Lindsay Wagner, Rosemary Freed, Michael Williamson, Andrew Krominga, Jerry Freed, Jodie Marcantoni, and Clayton Freed, Plaintiffs and Cross-Defendants-Appellants). | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |

| | | |
|---|---|---|
| BRIAN FREED, Individually and as Trustee of the | ) | No. 15CH30 |
| MCLEAN LAND TRUST LEF-4, FREED LAND | ) | |
| TRUST NO. 2, and MR.BJD LAND TRUST, | ) | |
|        Plaintiffs, | ) | |
|        v. | ) | |
| LOREN FREED, Individually and as TRUSTEE OF | ) | |
| FREED LAND TRUST NO. 1, MARILYN WAGNER, | ) | |
| CYNTHIA HICE, JARED WAGNER, LEAH | ) | |
| WAGNER, LINDSAY WAGNER, ROSEMARY | ) | |
| FREED, MICHAEL WILLIAMSON, ANDREW | ) | |
| KROMINGA, JERRY FREED, JODIE MARCANTONI, | ) | |
| CLAYTON FREED, BEN FREED, SARA FREED, | ) | |
| DYLAN FREED, BRUCE FREED, Individually and as | ) | |
| EXECUTOR OF THE ESTATE OF SHIRLEY | ) | |
| DOWNES, ALLISON FREED, and JULIE FREED, | ) | |
| Individually and as EXECUTOR OF THE ESTATE OF | ) | |
| DAVID FREED, | ) | |
|        Defendants | ) | |
| | ) | |
| (Ben Freed, Sara Freed, Dylan Freed, and Julie Freed, | ) | |
| Individually and as Executor of the Estate of David | ) | |
| Freed, Defendants and Cross-Plaintiffs-Appellees; | ) | |
| Marilyn Wagner, Cynthia Hice, Jared Wagner, Leah | ) | Honorable |
| Wagner, Lindsay Wagner, Rosemary Freed, Michael | ) | Paul G. Lawrence, |
| Williamson, Andrew Krominga, Jerry Freed, Jodie | ) | Judge Presiding. |
| Marcantoni, and Clayton Freed, Defendants and Cross- | ) | |
| Defendants-Appellants). | ) | |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court (1) properly denied respondents' motion to dismiss petition to surcharge attorney fees and (2) did not abuse its discretion in awarding attorney fees.

¶ 2    This case comes to us following a dispute among members of the Freed family

over farmland owned by Loren Freed and involving the following four trusts: (1) Loren E. and

Shirley Freed Trust Number One ("Trust No. 1"), (2) Loren E. and Shirley Freed Family Trust (the "Family Trust"), (3) McLean County Land Trust LEF-4 (the "LEF-4 Trust"), and (4) Trust Number MR.BJD (the "MRBJD Trust") (collectively the "Trusts").

¶ 3    In July 2018, following several years of trust litigation, defendants in one of the underlying consolidated actions (McLean County case No. 15-CH-30), Ben Freed, Sara Freed, Dylan Freed, and Julie Freed, individually and as Executor of the Estate of David Freed (collectively "petitioners"), filed a petition to surcharge attorney fees. Eleven codefendants (Marilyn Wagner, Cynthia Hice, Jared Wagner, Leah Wagner, Lindsay Wagner, Rosemary Freed, Michael Williamson, Andrew Krominga, Jerry Freed, Jodie Marcantoni, and Clayton Freed) (collectively "respondents") filed a motion to dismiss the petition.

¶ 4    Following a hearing in December 2018, the trial court denied respondents' motion to dismiss and granted the petition to surcharge attorney fees. In January 2019, respondents filed a motion to reconsider, which the trial court denied. In March 2019, the trial court entered a written order awarding $60,000 in fees, to be apportioned equally among the four Freed family "branches" comprising the respondents in this case.

¶ 5    On appeal, respondents argue the trial court (1) erred by denying their motion to dismiss the petition to surcharge attorney fees because petitioners were not entitled to fees as a matter of law and (2) abused its discretion in awarding fees. For the following reasons, we affirm the trial court's judgment.

¶ 6                                    I. BACKGROUND

¶ 7    Due to the voluminous record in this case, we discuss below only those facts relevant to resolve the issues presented on appeal.

¶ 8                                A. Underlying Litigation

¶ 9         In December 2014, various members of the Freed family (including petitioners and respondents in this appeal) filed a complaint, which was docketed as McLean County case No. 14-CH-257, alleging Brian Freed ("Brian"), Freed Acres, LLC, and Bruce Freed had failed to pay fair market rent for farmland that the Freed family owned in McLean County. Brian had farmed the land at issue pursuant to an oral lease since the previous tenant, his brother David Freed, died in 2013. The complaint further sought foreclosure of a crop lien, eviction, and damages stemming from the breach of Brian's fiduciary duty. On February 3, 2015, Brian, individually and as Trustee of the LEF-4 Trust and the MRBJD Trust, filed a complaint in a separate action, which was docketed as McLean County case No. 15-CH-30, naming petitioners and respondents as defendants. The complaint sought, among other things, (1) supervision of the administration of the Trusts, (2) an evaluation of the status of each trust under Illinois law, (3) the sale of farmland in the Trusts to satisfy liabilities, (4) a partition of any remaining farmland, and (5) dissolution of the Trusts. In June 2015, the trial court consolidated the two cases.

¶ 10        On June 3, 2015, Brian filed a motion to determine the status of the Trusts, arguing that it was unclear whether the Trusts were traditional trusts under Illinois law or land trusts given their ambiguous and contradictory language.

¶ 11        Over the course of the next 16 months or so, the parties engaged in a lengthy discovery process—which this court declines to recount in detail—that eventually devolved into various motions to show cause, motions to compel, a petition for injunctive relief and tortious damages, and requests for sanctions. During this time, Brian's rent payments for the farmland were held by the circuit clerk's office and distributions were made to beneficiaries by court order. In October 2016, respondents' previous counsel, Mercer Turner, filed a motion to

withdraw his representation of petitioners, and petitioners filed a motion to substitute new counsel into the case to represent their separate interests. In November 2016, in response to Brian's motion for rule to show cause and for sanctions, the trial court found that there was "clear and obvious abuse of discovery rules by [respondents'] counsel, Mercer Turner, and that sanctions are awarded to [Brian] against [respondents'] counsel *** only and denied as to any of his clients ***." The court further ordered that "no motions are allowed to be filed by Mercer Turner or his clients (in these consolidated cases) until payment of sanctions are complete and until all written discovery has been fully complied with pursuant to further order of this court."

¶ 12        In January 2017, Brian filed motions (1) to authorize the employment of a land rent expert to determine fair cash rent amounts due and owing from him for the years 2012 to 2017, an issue which was raised in the complaint in case No. 15-CH-257, and (2) for permission to farm the land at issue in 2017. (Since the litigation began in 2014, Brian had also filed motions to farm in 2015 and 2016, which the trial court granted.)

¶ 13        On March 3, 2017, petitioners filed three pleadings in the trial court. The first was a petition to direct Brian Freed, as trustee of the LEF-4 Trust, to sell property held by the trust at a public sale as required by the terms of the trust agreement. Petitioners also filed a response to Brian's June 3, 2015, motion to determine the status of the trusts. Petitioners argued that Trust No. 1, the LEF-4 Trust, and the MRBJD Trust were all unambiguously land trusts. However, petitioners argued that the language in the Family Trust was ambiguous and therefore the court should hold an evidentiary hearing in order to determine its status. Finally, petitioners filed a response to Brian's motions to farm in 2017. In the response, petitioners requested that a farm manager, such as Soy Capital Ag Services (Soy Capital), be appointed to oversee and supervise the farming for the 2017 crop year. In support of their request, petitioners stated:

"Reports provided by the farm manager would provide transparency and accountability; and would go a long way towards reducing the mistrust against the interested parties. The financial institutions in Central Illinois that have agricultural operations are all capable of fulfilling this role ***. The costs of having a farm manager should be split 50/50 by and between the tenant farmer (*i.e.* Brian Freed) and the land trusts."

¶ 14 Petitioners then called the matters of (1) their petition to direct the trustee to sell property held by the LEF-4 Trust, (2) Brian Freed's motion to farm in 2017, and (3) Brian Freed's motion to retain a land rent expert for hearing, which was held on April 7, 2017.

¶ 15 At the hearing, petitioners argued that they had no "fundamental objection" to the retention of a land rent expert to determine the fair market rents for crop years 2012 to 2017. Petitioners then presented several color-coded maps identifying the actual acreage held by each trust and the corresponding percentage interest for each beneficiary. Petitioners further argued the trial court should direct Brian Freed to liquidate the assets of the LEF-4 Trust under the terms of the trust, which "was supposed to terminate 20 years after the effective date, which would have been back in 2014." Petitioners reiterated their request to hire a farm manager in order to provide "independence and transparency," as it was "clear the family's in dispute."

¶ 16 On April 13, 2017, the trial court entered a written order granting Brian's motion to retain a land rent expert. The court entered an additional written order granting Brian's motion to farm in 2017.

¶ 17 On July 5, 2017, petitioners filed a petition to modify or terminate the land trusts, in which they argued the following:

"In the instant case, there were several unforeseen circumstances not anticipated by the settlor[, Loren Freed]; including: (a) that the beneficial owners would, on a continuing and ongoing basis, be unable to reach unanimous or super-majority consent on issues pertaining to the administration of the Trusts; (b) the death of David Freed, who all of the beneficial owners respected and trusted to properly administer the Trusts; (c) that Brian Freed would attempt to take control of the Trusts over the objection of the other beneficial owners; and (d) that distributions of income would not be made, on a regular and consistent basis, to the settlor and beneficial owners. Collectively, these unforeseen circumstances substantially impair the purposes of the Trusts. In light of the foregoing, the Court should use its powers under equitable deviation to either: (a) modify the voting requirement threshold for any action pertaining to the Trust (*i.e.* [,] power of direction; replacement of trustee, etc.) to be any combination of beneficial interest owners whose combined percentage of beneficial interest ownership totals at least 51.0% of total ownership; or (b) terminate the Trusts and direct the trustee to deed each property out of each Trust in undivided interests to each beneficial owner in such percentage interest that matches their beneficial interests in each Trust."

¶ 18    On July 12, 2017, the court held a hearing on the matters of (1) Brian's motion to determine the status of the trusts, (2) the petition to direct the trustee to sell the LEF-4 property, and (3) the petition to modify or terminate the land trusts. Following the hearing, the trial court ordered the sale of the farmland held by the LEF-4 Trust and payment of accounting fees related to the Trusts. The court also determined as, a matter of law, that (1) the Family Trust was an

irrevocable grantor trust and (2) Trust No. 1, the LEF-4 Trust, and the MRBJD Trust were land trusts.

¶ 19  On September 18, 2017, the trial court entered a written order granting the petition to modify the land trusts. Specifically, the court ordered that the land trusts be modified to allow the trustee to act upon the written authority of 60% or more of the beneficial interest owners rather than only on the owners' unanimous written authority.

¶ 20  On November 8, 2017, the trial court entered another written order terminating Brian's tenancy of the farmland held by the Trusts. The order also directed, by agreement of the parties, that the beneficial owners of the farmland held by the Trusts enter into a separate farm management agreement with Soy Capital for the 2018 crop year.

¶ 21  On May 23, 2018, Brian filed a motion for voluntary dismissal of his complaint in case No. 15-CH-30, stating that he had resigned as trustee of the Trusts. The trial court entered a written order on the same date granting the motion to dismiss and finding that Brian's resignation as trustee rendered his counterclaim moot.

¶ 22  On July 3, 2018, petitioners filed a petition to surcharge attorney fees and costs. Petitioners argued that after they substituted their present counsel into the case, they were "able to identify 'serious questions' concerning the construction and/or administration of the Trusts and present those issues to the Court, the resolution of which benefited each beneficiary of the Trusts." They identified those issues as the following: (1) retention of a land rent expert to provide an opinion as to the fair market rent for the crop years 2012 to 2017, (2) determination and resolution of the status of the Trusts, (3) directing and coordinating the sale of the farmland held by the LEF-4 Trust, (4) modification of the voting requirements of the land trusts, (5) blocking the termination of the Trusts, (6) appointment of Soy Capital as farm manager for

the farmland held by the Trusts for the 2018 crop year, (7) identifying the actual acreage held by each trust and the corresponding percentage interest of each beneficiary, and (8) reconciliation of rent amounts owed to each beneficiary. Petitioners stated they had incurred $89,678 in attorney fees and $6799.58 in costs over the course of the litigation. Citing *Rennacker v. Rennacker*, 156 Ill. App. 3d 712, 716, 509 N.E.2d 798, 801 (1987), petitioners stated:

> "Those costs and fees are reasonable and commensurate with the services rendered given: (i) the experience of their counsel; (ii) the complexity of the issues; (iii) the complexity of litigating the issues across multiple lawsuits; (iv) the collective value of the farmland and farm income at issue ***; and (v) the benefits received by each beneficiary as to the resolution of the issues presented to the court."

¶ 23 Respondents filed a motion to dismiss the petition pursuant to section 2-615 of the Code of Civil Procedure ("Procedure Code") (735 ILCS 5/2-615 (West 2018)), arguing petitioners were not entitled to attorney fees as a matter of law. Specifically, respondents argued that the petition failed to allege (1) an exception to the "American Rule" for attorney fees related to the construction of any trust at issue, particularly of the three land trusts, and (2) any patent ambiguity in the drafting of any trust.

¶ 24 Following a hearing on December 5, 2018, the trial court granted the petition to surcharge attorney fees and denied respondents' motion to dismiss but reserved ruling on the amount to be surcharged. In granting the petition, the court stated:

> "As [petitioners' counsel] has stated, according to the *Orme* case, O-r-m-e, the Court does have to determine whether or not a serious question was raised by [petitioners' counsel] and his clients in relation to the administration of these four

trusts. And certainly the Court has dealt with a lot of questions and certainly serious questions within this litigation. And [petitioners' counsel] did, in fact, move this litigation along when he came into the litigation after it had stalled, so to speak, as he has pointed out. And did assist all of the parties in resolving many issues related to these trusts including: The appointment of Dr. Schnitzky, determining what the trusts were, liquidating LEF4, modifying the voting requirements, getting Soy Capital involved, using his spreadsheet at the final argument stage when the Court determined the rent. And I think that all of those would meet the requirements of serious questions under the *Orme* decision.

And while the Court has determined that three of the trusts were land trusts, the Court, of course, did determine that one, in fact, was a grantor trust. And so I think that this would apply, the *Orme* case would apply to this particular situation. And so I am going to grant the petition."

¶ 25 On January 4, 2019, respondents filed a motion to reconsider their motion to dismiss the petition to surcharge attorney fees. On January 15, 2019, petitioners' counsel filed an affidavit averring that the fees and costs incurred by petitioners in the underlying litigation totaled $120,010.96.

¶ 26 On February 22, 2019, the trial court held a hearing on the amount to be surcharged. On March 26, 2019, the trial court entered a written order denying respondents' motion to reconsider and awarding $60,000 in fees, to be apportioned equally among the four Freed family "branches." The court further ordered that the balance of the attorney fees incurred by petitioners as identified in their counsel's affidavit would be the responsibility of and paid by petitioners. Finally, the court stated:

"The court specifically acknowledges that the attorney's fees [*sic*] have not been surcharged directly against the Trusts that were the subject of the above-captioned matter; but instead as against the beneficiary branches which approach is consistent with the discussion and representations of the parties prior to the entry of the June 19, 2018, Order authorizing the disbursement of Trust monies held by the Circuit Clerk."

¶ 27 This appeal followed.

¶ 28 II. ANALYSIS

¶ 29 On appeal, respondents argue the trial court (1) erred by denying their motion to dismiss the petition to surcharge attorney fees because petitioners were not entitled to fees as a matter of law and (2) abused its discretion in awarding fees. Respondents further argue that petitioners forfeited any argument that attorney fees were appropriate under the "common fund" doctrine outlined in *Rennacker* by failing to raise the issue in their petition before the trial court. For the following reasons, we affirm the trial court's judgment.

¶ 30 A. Motion to Dismiss

¶ 31 Respondents argue the trial court erred in denying their motion to dismiss the petition to surcharge attorney fees because petitioners were not entitled to fees as a matter of law.

¶ 32 A motion to dismiss under section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2018)) challenges only the legal sufficiency of the complaint. *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 20, 11 N.E.3d 57. In ruling on a section 2-615 motion to dismiss, "the question is 'whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted.' " *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 458-59 (2009) (quoting *Vitro v. Mihelcic*,

209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004)). The trial court should not grant the motion to dismiss "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161, 920 N.E.2d 220, 223 (2009). We review the denial of a section 2-615 motion to dismiss *de novo*. *Excelsior Garage Parking, Inc. v. North Dearborn Condominium Ass'n*, 2015 IL App (1st) 133781, ¶ 19, 36 N.E.3d 991. We may affirm the trial court's judgment on any basis supported by the record. *Tummelson v. White*, 2015 IL App (4th) 150151, ¶ 26, 47 N.E.3d 579.

¶ 33                                                1. *Applicable Law*

¶ 34        "In will construction cases, the costs of litigation are borne by the estate on the theory that the testator expressed his intention so ambiguously as to necessitate construction of the instrument in order to resolve adverse claims to the property." *Orme v. Northern Trust Co.*, 25 Ill. 2d 151, 165, 183 N.E.2d 505, 513 (1962). The rule applies equally in the construction of a testamentary trust. See *Northern Trust Co. v. Heuer*, 202 Ill App. 3d 1066, 1071, 560 N.E.2d 961, 964 (1990). Generally, "fees should not be authorized where such construction is unnecessary." *Orme*, 25 Ill. 2d at 165. "The criterion is whether an honest difference of an opinion exists." *Orme*, 25 Ill. 2d at 165. The award of attorney fees may be proper where a party presents a "serious question" as to the construction of the trust. *Orme*, 25 Ill. 2d at 165; see also *Cahill v. Cahill*, 402 Ill. 416, 424-28 84 N.E.2d 380, 385-87 (1949) (allowing attorney fees where a remainder to "heirs of blood" presented a serious question in construction of a will).

¶ 35        Under a different theory, known as the "common fund doctrine," a party may be entitled to an award of attorney fees in trust litigation where the party, having a common interest in the trust fund, takes proper steps "to save it from destruction and restore it to the purposes of the trust." *Rennacker*, 156 Ill. App. 3d at 716. In *Rennacker*, the court found that the award of

attorney fees was proper where "[t]he lack of communication between the parties contributed to [the beneficiary's] lack of faith in [the trustee] and her belief that the trust was not being properly administered." *Rennacker*, 156 Ill. App. 3d at 716. In awarding fees, the trial court may order the funds be distributed "out of the fund itself or by proportional contributions from those who accept the benefits of the effort." *Rennacker*, 156 Ill. App. 3d at 716. "[T]he court must establish a sum that is reasonable and commensurate with the services rendered and the amount in controversy." *Rennacker*, 156 Ill. App. 3d at 716.

¶ 36                                    2. *Forfeiture*

¶ 37        We must first address respondents' contention that petitioners forfeited any argument they were entitled to attorney fees based on the common fund doctrine and *Rennacker*. Respondents argue that "the underlying petition, [p]etitioners' oral argument at court, and the circuit court's findings and opinion all relied upon the 'serious question' test employed in *Orme*." Respondents contend that any argument based on *Rennacker* is forfeited because it was not "properly presented to the lower court, and this [c]ourt should not review issues that the lower court did not decide." "[I]ssues, theories, or arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal." *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8, 1 N.E.3d 1231.

¶ 38        We find respondents' forfeiture argument unavailing because petitioners did, in fact, argue they were entitled to attorney fees under *Rennacker* in their initial petition. Respondents are correct that the parties focused on the "serious question" test from *Orme* during oral argument, and the trial court relied on *Orme* in its decision to order attorney fees. However, respondents fail to acknowledge that petitioners cited to *Rennacker* twice in their initial petition. As discussed above, petitioners, citing *Rennacker*, 156 Ill. App. 3d at 716, argued they were

- 13 -

entitled to attorney fees based on "the benefits received by each beneficiary as to the resolution of the issues presented to the court." Moreover, even if *Rennacker* was not the primary basis for petitioners' request for attorney fees, "an appellee may raise any argument in support of the trial court's judgment even if it was not directly ruled upon by the trial court." *City of Chicago v. Powell*, 315 Ill. App. 3d 1136, 1144, 735 N.E.2d 119, 126 (2000). As the appellees in this case, petitioners were permitted to raise any argument in support of the trial court's judgment.

¶ 39                                3. *Denial of Motion to Dismiss*

¶ 40        Respondents argue on appeal that petitioners were not entitled to fees as a matter of law because (1) the *Orme* rule only applies to testamentary trusts, (2) no testamentary trust is at issue in this case, and (3) even if the *Orme* rule applied, there was no honest difference of opinion between the parties regarding the proper construction of the trust.

¶ 41        In their petition to surcharge attorney fees and costs, petitioners argued that fees were warranted because of their efforts in restoring the Trusts to their purposes, protecting the Trusts' assets and ensuring their proper distribution, and resolving ambiguities relating the trust instruments. Specifically, petitioners argued their efforts led to the resolution of the following issues: (1) retention of a land rent expert to provide an opinion as to the fair market rent for the crop years 2012 to 2017, (2) determination and resolution of the status of the Trusts, (3) directing and coordinating the sale of the farmland held by the LEF-4 Trust, (4) modification of the voting requirements of the land trusts, (5) blocking the termination of the Trusts, (6) appointment of Soy Capital as farm manager for the farmland held by the Trusts for the 2018 crop year, (7) identifying the actual acreage held by each trust and the corresponding percentage interest of each beneficiary, and (8) reconciliation of rent amounts owed to each beneficiary.

¶ 42       Here, in construing the petition in the light most favorable to the petitioners, the allegations in the petition were sufficient to establish a claim for attorney fees based on the common fund doctrine outlined in *Rennacker*. Although the trial court found fees were warranted based on the "serious question" test in *Orme*, we may affirm the trial court's judgment on any basis supported by the record. *Tummelson*, 2015 IL App (4th) 150151, ¶ 26. Petitioners, having a common interest in the Trusts at issue in this case, offered ample support for their claim that they took "proper proceedings to save [the Trusts] from destruction and restore[d] [them] to [their] purposes ***." *Rennacker*, 156 Ill. App. 3d at 716. Accordingly, we need not address respondents' argument that the *Orme* rule is inapplicable in this case and find the trial court properly denied defendants' motion to dismiss.

¶ 43                          B. Attorney Fees Award

¶ 44       We next turn to whether the trial court erred in awarding attorney fees. Respondents argue the trial court abused its discretion when it ordered (1) the surcharge of fees related to other matters not allowed by *Orme* and (2) the payment of the fees by the beneficiaries of the Trusts.

¶ 45       The need for and the amount of attorney fees rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Heuer*, 202 Ill. App. 3d at 1071; *Rennacker*, 156 Ill. App. 3d at 715-16. Under *Rennacker*, the court "must establish a sum that is reasonable and commensurate with the services rendered and the amount in controversy." *Rennacker*, 156 Ill. App. 3d at 716.

¶ 46       Here, the trial court did not abuse its discretion in awarding attorney fees. Petitioners presented ample evidence that their efforts restored the Trusts to their proper purposes and provided a benefit to the beneficiaries. See *id.* It was not until petitioners' counsel

- 15 -

was substituted into the case that many of the issues in this case were resolved. Specifically, the trial court found:

> "[Petitioners' counsel] did, in fact, move this litigation along when he came into the litigation after it had stalled, so to speak, as he has pointed out. And did assist all of the parties in resolving many issues related to these trusts including: The appointment of Dr. Schnitzky, determining what the trusts were, liquidating LEF4, modifying the voting requirements, getting Soy Capital involved, using his spreadsheet at the final argument stage when the Court determined the rent."

Petitioners' work benefitted all of the beneficiaries because their efforts resolved the status of the Trusts, simplified their administration (by modifying the voting requirements and liquidating the LEF-4 assets), resulted in professional management of the farm (thereby preventing the constant intrafamilial disagreements and increasing transparency), reconciled the amounts owed to each beneficiary (ending the practice of requiring court intervention for every distribution), and accurately identified the parties' beneficial interests in each of the Trusts.

¶ 47        Additionally, because we find that attorney fees were proper under *Rennacker* rather than *Orme*, respondents' argument that the trial court abused its discretion in awarding fees based on petitioners' failure to identify any written ambiguity in the trust instruments is inapplicable here. Under *Rennacker*, there is no requirement, as respondents argue, that a party must present a patent ambiguity in the trust instruments "so fraught as to require construction by the court." Petitioners needed only demonstrate an interest in the common fund and that they took proper steps to save the Trusts from destruction or restore them to their proper purposes.

¶ 48        Furthermore, respondents' contention that the trial court erred in ordering fees where petitioners' counsel's affidavit included "fees and costs incurred in different matters,

including the probate of the Estate of Shirley Downs and the divorce of Loren and Shirley Freed," is unpersuasive. In awarding fees, the trial court was not required to parse through the affidavit, issue by issue, to determine the precise amount to which petitioners were entitled. Rather, the court was required to "establish a sum that is reasonable and commensurate with the services rendered and the amount in controversy." *Rennacker*, 156 Ill. App. 3d at 716. Given that this case involved almost 700 acres of farmland, $1.2 million in farm income deposited with the circuit clerk's office, and complex issues litigated across multiple lawsuits over several years, we do not find that the trial court's award of $60,000 was unreasonable or not commensurate with the services rendered.

¶ 49 We also reject respondents' argument that the trial court erred by allocating the fee award *pro rata* rather than to the trust estate because respondents did not properly raise this issue in the trial court and have therefore forfeited any argument challenging it on appeal. First, the *Rennacker* court specifically held that a party in trust litigation may be awarded fees "either out of the fund itself or *by proportional contributions from those who accept the benefits of the effort*." (Emphasis added.) *Rennacker*, 156 Ill. App. 3d at 716. Petitioners specifically requested in their petition that the fees be "appropriated equally amongst each of the five branches of the family" (including petitioners). Respondents never objected to this request in their motions to dismiss or to reconsider; rather, respondents merely stated in their February 5, 2019, response to petitioners' counsel's affidavit that "the [p]etition fails to cite any authority supporting its request that fees be allocated *pro rata* to the five branches of the family"—a contention which is belied by the record. Moreover, respondents' counsel was present at the final fee award hearing and failed to object during a lengthy discussion regarding the agreement to divide the fees *pro rata* between the family branches. Furthermore, the trial court's written order clearly states that the

- 17 -

attorney fees were to be charged "as against the beneficiary family branches *which approach is consistent with the discussion and representations of the parties* \*\*\*." (Emphasis added.) Accordingly, respondents forfeited any argument regarding the *pro rata* allocation of fees. See *Chaney*, 2013 IL App (3d) 120565, ¶ 8.

¶ 50                                    III. CONCLUSION

¶ 51          For the reasons stated, we affirm the trial court's judgment.

¶ 52          Affirmed.